**CONSOLIDATED CAPITAL SPECIAL TRUST, Appellant,**

v.

**James M. SUMMERS, Trustee, and English Village Apartments, Ltd., Appellees.**

No. C14–85–873–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 23, 1987.

Rehearing Denied Aug. 13, 1987.

George H. Tarpley, Houston, for appellant.

Linda Addison, Roger D. Townsend, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Consolidated Capital Special Trust ("Consolidated"), was the owner of an apartment complex foreclosed on by appellee, English Village Apartments, Ltd. ("EVA" or appellee), and purchased at the mortgage foreclosure sale by EVA. Consolidated sued EVA and appellee, James Summers, Trustee ("Summers" or appellee), to recover excess proceeds allegedly generated by the foreclosure sale. EVA counterclaimed to recover post-foreclosure rents and security deposits collected by Consolidated prior to foreclosure.

The parties filed cross motions for summary judgment. The trial court granted summary judgment in favor of EVA and Summers but denied Consolidated's motion. Consolidated appeals both the denial of its motion and the granting of appellees' motion. We reverse the trial court's denial of summary judgment to Consolidated and render judgment that Consolidated be granted summary judgment on its excess proceeds claim, less the trustee's fee, plus interest. We also reverse the summary judgment granted to EVA and Summers

and render judgment that appellees take nothing.

Consolidated presents three points of error, alleging the trial court erred in: (1) denying summary judgment on its claim to recover excess proceeds generated by the foreclosure sale, since no material fact issues existed and Consolidated was therefore entitled to judgment as a matter of law; (2) granting summary judgment in favor of EVA and Summers in the amount of $66,917 for rents and security deposits, because appellees were not entitled to judgment as a matter of law; and (3) granting summary judgment and awarding monetary damages in favor of EVA and Summers on their rents and security deposits claim, because material fact issues were raised on the liability and damages aspect of the claim.

A brief outline of the facts is necessary to an understanding of the issues presented. Consolidated was the record title owner of the English Village Apartments ("the property"), located in Harris County, Texas, for the period preceding foreclosure on June 5, 1984. The mortgage foreclosure sale was conducted by Summers, the substitute trustee. EVA, the entity holding the note secured by the deed of trust pursuant to which foreclosure occurred, was the highest bidder at the foreclosure sale, purchasing the property for the sum of $2,750,000.

At the time of foreclosure the property was encumbered by five liens under five separate deeds of trust. Consolidated's appeal concerns primarily the fourth and fifth liens and their relationship.[1]

The fourth and fifth liens are:

| LIEN | IN FAVOR OF | ORIGINAL PRINCIPAL SUM | EXECUTED | DUE |
|------|-------------|------------------------|----------|-----|
| "Fourth" | RAIA | $ 500,000 | 09/25/80 | 10/01/83 |
| "Fifth" | EVA (wrap note) | $4,700,000 | 10/01/80 | 10/01/83 |

The summary judgment proof establishes that EVA purchased the property at foreclosure subject to the four pre-existing liens. The notice of trustee's sale pursuant to which EVA foreclosed states that "[a]ny sale made pursuant to this notice shall be expressly made subject to the 'Prior Liens' described in [the deed of trust]." The trustee's deed states that "[t]his deed is expressly made subject to the 'Prior Liens' described in [the deed of trust]." The EVA fifth lien deed of trust defines "Prior Liens" as the first four liens.

It is undisputed that the fifth lien was to secure a wraparound note that specifically

wrapped the notes secured by the four prior liens encumbering the property. The fifth lien, executed on October 1, 1980, became due and payable to EVA on October 1, 1983. The fourth lien, executed on September 25, 1980, also became due and payable to RAIA on October 1, 1983. The notes secured by the first three liens on the property are not yet due.

On May 14, 1984, Summers notified Consolidated by certified mail of its default under the fifth lien, and of EVA's intent to foreclose and sell the property at public sale on June 5, 1984, if the default were not

---

1. The first three liens are involved in the appeal only to the extent that reference is made to "Prior Liens" in the relevant instruments. The first three liens, included in the fifth lien wrap note, are as follows:

| LIEN | IN FAVOR OF | ORIGINAL PRINCIPAL SUM | EXECUTED | DUE |
|------|-------------|------------------------|----------|-----|
| "First" | John Hancock Mutual Life Ins. Co. | $2,450,000 | 06/25/71 | 06/01/98 |
| "Second" | Gaslight Square (wrap note) | $2,775,000 | 10/25/77 | 10/25/89 |
| "Third" | Manchester Group (wrap note) | $3,250,000 | 08/16/78 | 08/15/89 |

cured. A notice of trustee's sale was posted. On May 17, 1984, Michael Waterman, acting on behalf of EVA's authorized agent, sent notice to Consolidated of a pay-off amount of $3,189,371.27. The Waterman letter further stated the payoff sum "include[d] all proceeds due to RAIA Company [, the fourth lienholder]."

Foreclosure of the property occurred June 5, 1984. EVA was the highest bidder at the foreclosure sale, which was conducted by Summers as trustee. EVA purchased the property for the sum of $2,750,000.

Consolidated subsequently demanded payment from EVA and Summers for excess proceeds allegedly generated by the foreclosure sale, plus interest, costs and attorneys' fees. EVA and Summers filed a general denial and counterclaimed for the sum of $66,917 purportedly owing from rents and security deposits collected by Consolidated.

When, as in the case before us, both parties move for summary judgment, each must carry his own burden; neither can prevail because the cross-movant has failed to discharge his burden. *Miller and Freeman Ford, Inc. v. Greater Houston Bank,* 544 S.W.2d 925, 926 (Tex.1976), citing *Tigner v. First Nat'l Bank of Angleton,* 153 Tex. 69, 264 S.W.2d 85 (1954). The burden is thus on each movant to show, as a matter of law, all elements constituting his own cause of action or defense in order for summary judgment to be granted. Tex.R. Civ.P. 166-A.

Cross motions for summary judgment were before the trial court, which granted summary judgment in favor of EVA and Summers but overruled Consolidated's motion. Therefore, we may determine the propriety of the court's ruling on each motion; and we are further authorized, upon reversal, to render such judgment as the trial court should have rendered on all questions presented. *The Atrium v. Kenwin Shops of Crockett, Inc.,* 666 S.W.2d 315, 317 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Holmquist v. Occidental Life Co. of California,* 536 S.W.2d

434, 438 (Tex.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Keeping in mind the complex fact situation presented, as well as the law regarding cross motions for summary judgment, we now address Consolidated's points of error contesting the propriety of the trial court's rulings.

In its first point of error, Consolidated contends the trial court erred in denying summary judgment on its excess proceeds claim. Since no genuine issues of material fact exist, Consolidated asserts it is entitled to judgment as a matter of law. We agree and sustain Consolidated's first point of error.

Consolidated takes the position it is entitled to the excess proceeds generated by the sale of the property at foreclosure. Conversely, EVA and Summers argue there were no excess proceeds; in fact, a deficiency existed due to EVA's contractual obligation to use the proceeds to pay the RAIA fourth lien note, due and owing since October 1, 1983.

Consolidated sets forth the following calculations in support of its position:

| | | |
|---|---|---|
| TOTAL DEBT (principal, interest, and fees) OF FIFTH LIEN (wraps first four liens) | | $ 6,206,952 |
| AMOUNT OF "PRIOR LIENS" DEBT (to which foreclosure was subject) | | |
| —Third lien (wraps first two liens) | $3,017,581 | |
| —RAIA note (fourth lien) | 976,685 | |
| | $3,994,266 | $(3,994,266) |
| AMOUNT OWED TO EVA ON FIFTH LIEN | | $ 2,212,686 |
| AMOUNT BID AT FORECLOSURE | | $ 2,750,000 |
| LESS AMOUNT OWED | | $(2,212,686) |
| EXCESS PROCEEDS | | $ 537,314 |

Consolidated thus asserts EVA and Summers owe $537,314 as a matter of law.

EVA and Summers agree with Consolidated that the total debt under the fifth lien is $6,206,952, and that the principal amount of the first three underlying liens totals $3,017,581. However, appellees vigorously dispute the inclusion of the fourth lien in the total amount of "Prior Liens," *i.e.,* in the underlying indebtedness to which the foreclosure sale was made subject. They contend they were contractually

obligated to satisfy the RAIA fourth lien note; therefore, no excess proceeds exist as a matter of law.

The EVA–Summers calculations are as follows:

| | |
|---|---|
| TOTAL DEBT OF FIFTH LIEN | $6,206,952 |
| AMOUNT OF "PRIOR LIENS" DEBT (RAIA FOURTH LIEN AMOUNT NOT INCLUDED) | ($3,017,581) |
| AMOUNT OWED ON FIFTH LIEN | $3,189,371 |
| AMOUNT BID AT FORECLOSURE | $2,750,000 |
| LESS AMOUNT OWED | ($3,189,371) |
| DEFICIT | $ 439,371 |

The sole issue in Consolidated's first point of error is whether Summers, acting as trustee, was empowered to apply the proceeds generated by the sale of the property to retire the RAIA fourth lien debt. We hold he possessed no such authority. Therefore, any fact issues as to whether or not the RAIA debt was in fact paid are irrelevant.

■ The law is clear that a trustee must adhere strictly to the terms of the power of sale set forth in a deed of trust. *Houston First American Savings v. Musick*, 650 S.W.2d 764, 768 (Tex.1983); *University Savings Association v. Springwoods Shopping Center*, 644 S.W.2d 705, 706 (Tex.1982); *Winters v. Slover*, 151 Tex. 485, 251 S.W.2d 726, 728 (1952); *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 675 (1942). A trustee's power to sell a debtor's property derives solely from the deed of trust pursuant to which foreclosure occurred, and the powers conferred therein must be strictly followed. *Slaughter v. Qualls*, 162 S.W.2d at 675.

It is also well established that foreclosure of a junior lien normally has no effect on the rights of senior interest holders, even if the interests are in default. *United States v. Sage*, 566 F.2d 1114 (9th Cir.1977). Absent specific language to the contrary in the instrument under which a note is foreclosed, preexisting interests remain unaffected.

The fifth lien deed of trust pursuant to which EVA foreclosed provides for sale of the property as follows:

With the proceeds arising from such sale or sales, the Trustee shall first pay all expenses of advertising, sale and conveyance, including a commission of 5% of the gross proceeds of such sale or sales to the Trustee acting, and shall next apply such proceeds toward the payment of the indebtedness secured hereby (principal, interest, attorney's fees, if any), and the remaining balance, if any, shall be paid to [the owners of the property].

The language of the fifth lien deed of trust controls the disbursement of excess proceeds, if any. Therefore, pursuant to the deed of trust, we hold Summers must pay any excess proceeds, after expenses, to Consolidated.

We have carefully reviewed the language of all relevant instruments included in the summary judgment proof offered by the parties. We find no provision either in the fifth lien, or in the deed of trust that secures it, expressly or impliedly empowering Summers as trustee to retire the RAIA fourth lien debt with the foreclosure sale proceeds.

As support for their position, Summers and EVA cite us to language in the fifth lien, which they claim mandated payment by Summers of the RAIA fourth lien. We are unconvinced by appellees' argument. EVA and Summers have omitted any reference to default in their quote, thereby altering the provision's qualification. In fact, the fifth lien provision reads as follows:

[T]he Payee has agreed that *so long as there is no default* under the terms of the Note or this Deed of Trust ... *Payee shall pay out of the payments received under the Note all regular installments of principal and interest as same shall become due and payable under the notes* hereinabove described.... (emphasis added).

The fifth lien note and deed of trust were undeniably in default as of June 5, 1984, the date of foreclosure. Therefore, we find the language of the fifth lien does not authorize payment of the RAIA note.

The summary judgment proof also shows that the fourth lien note makes reference to the proceeds anticipated to be received from the sale of the property under the

fifth lien.[2] However, the fourth lien was executed on September 25, 1980, several days prior to the fifth lien's date of execution. The fourth lien is senior. The two were not part of one contemporaneous transaction; notwithstanding their identical maturity dates, they may not be construed together. The trustee's authority may thus not derive from the RAIA transaction.

The fact that the fifth lien note was a wrap note does not alter our reasoning. The debt foreclosed included *only the fifth lien.* EVA purchased the property "expressly ... subject to the 'Prior Liens' described in [the fifth lien deed of trust]." The deed of trust refers specifically to the first four liens.

■ We hold that Summers was not empowered to apply any proceeds generated by the foreclosure sale of June 5, 1984, to retire the RAIA debt. We hold as well that excess proceeds exist and that Consolidated is entitled to those proceeds as a matter of law. Therefore, the trial court erred in denying Consolidated's motion for summary judgment.

Consolidated has met its burden of proving it was entitled to judgment on its claim of excess proceeds as a matter of law. However, we disagree with its calculation that the excess totals $537,314. The language of the fifth lien deed of trust, controlling the disposition of proceeds, orders the trustee to "pay all expenses of [the sale], *including a commission of 5% of the gross proceeds of the sale to the Trustee* ...." (emphasis added). The summary judgment proof contains no evidence of any sale expenses other than the trustee's commission. We therefore determine the fixed trustee's fee to be $137,500 (5% of $2,750,-000, or the gross proceeds of the sale), which is to be deducted from the proceeds, leaving net excess proceeds of $399,814.

We hold the trial court erred in denying Consolidated's motion for summary judgment. We sustain Consolidated's first point of error and hold that Consolidated is entitled to judgment against appellees for $399,814, plus interest as hereinafter specified.

In its second point of error, Consolidated alleges the trial court erred in granting summary judgment for EVA and Summers on their rents and security deposits claim because appellees were not entitled to judgment as a matter of law. We agree and sustain Consolidated's second point of error.

Prior to foreclosure, Consolidated had collected rents and tenant security deposits for the entire month of June 1984. The summary judgment proof offered by EVA and Summers, consisting of the affidavit of Margaret Stickle (a bookkeeper for an EVA general partner), represents the total to be $66,917. However, the amounts allocable to rents and security deposits are not specified. Since two distinct issues are involved in Consolidated's second point of error, we shall address the rent and security deposit questions separately.

## RENTS

The trial court held EVA and Summers were entitled to post-foreclosure rental sums collected by Consolidated prior to June 5, 1984. We disagree and hold the trial court improperly granted summary judgment on the rent issue; appellees' recovery of rents collected prior to foreclosure is prohibited as a matter of law.

■ Texas follows the majority "lien theory" of mortgages, in which the mortgagee is given a lien on the mortgaged property rather than legal title. Therefore, the mortgagee retains only a security interest; it is not entitled to possession of the property, rentals or profits. *Taylor v. Brennan,* 621 S.W.2d 592, 593 (Tex.1981). Texas courts accordingly adhere to the general rule that an assignment of rents creates simply a security interest in the rents; a mortgagee must take affirmative steps to enforce its security interest, such as taking possession of the property, impounding the rents, or appointing a receiver.[3] *Id.* at 594;

---

2. The fourth lien deed of trust is not included in the summary judgment proof.

3. Only if an assignment of rentals clause is construed as an *absolute assignment* would the right to rentals automatically transfer upon de-

*Simon v. State Mut. Life Assur. Co.*, 126 S.W.2d 682, 686 (Tex.Civ.App.—Dallas 1939, writ ref'd). *See also Matter of Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.1984).

■ The fifth lien deed of trust reads in pertinent part:

Grantors may collect and retain the currently accruing rents, revenues, profits and income from the mortgaged properties, but in no event for more than (1) month in advance of any such collection. In the event ... default is made in the keeping or performance of any of Grantors' covenants and obligations under this instrument, thereupon or at any time thereafter, while such or any subsequent default continues, *the holder of said indebtedness may ... take or have the trustee take possession and control of* above described land, premises, buildings, improvements and other properties covered hereby, or any part thereof, *and receive and collect all rents, revenues, profits and income* theretofore accrued or thereafter accruing therefrom so long as any of the indebtedness remains unpaid or until foreclosure of the lien.... (emphasis added).

Such language merely grants EVA the option, upon Consolidated's default, of appropriate action to recover rents through taking possession and control of the property.

In the case before us, EVA took no affirmative steps pursuant to its right of entry. Therefore, the trial court erred in awarding rental sums to EVA and Summers. We hold EVA and Summers are not entitled to any amount of the rents collected by Consolidated prior to foreclosure.

### SECURITY DEPOSITS

The trial court ruled appellees were entitled to judgment as a matter of law on the security deposits collected by Consolidated prior to foreclosure. We hold summary judgment was improperly granted. Summers and EVA have posited no legal theory upon which to prevail. Their reply brief asserts merely that the aforementioned fault. We find no such provision included in

Stickle affidavit proves their entitlement to the sum of $66,917 previously collected by Consolidated.

■ EVA and Summers have proved neither an ownership interest in the security deposits, nor any liability deriving from the deposits. The security deposits were not among the listed items included in the notice of trustee's sale, pursuant to which EVA foreclosed. Moreover, Section 92.105 of the Texas Property Code excludes EVA and Summers from liability. The provision reads:

§ 92.105. Cessation of Owner's Interest

(a) If the owner's interest in the premises is terminated by sale, assignment, death, appointment of a receiver, or otherwise, *the new owner is liable for the return of security deposits* according to this subchapter from the date title to the premises is acquired.

\*     \*     \*     \*     \*     \*

(c) *Subsection (a) does not apply to a real estate mortgage lienholder who acquires title by foreclosure.*

Tex.Prop.Code Ann. § 92.105 (Vernon 1984) (emphasis added). Subsection 92.105(a) of the Property Code imposes liability on new owners for return of tenant security deposits. However, subsection 92.105(c) is clear on its face. It exempts purchasers at mortgage foreclosure sales from subsection 92.-105(a) liability, thereby apparently forcing tenants to rely on the former owner's liability for return of their security deposits.

Since EVA acquired title by purchasing the property at a mortgage foreclosure sale, it falls squarely within the parameters of subsection 92.105(c). Consolidated, rather than EVA, remains liable for those deposits in its possession. The trial court improperly awarded security deposits to EVA and Summers.

We hold the trial court erred in granting appellees' motion for summary judgment. We therefore sustain Consolidated's second point of error and render judgment that EVA and Summers take nothing on their claim for rents and security deposits.

the fifth lien deed of trust.

■ It is unnecessary to address Consolidated's third point of error in view of the disposition of point of error two. We now consider Consolidated's claim for prejudgment interest at the legal rate from June 5, 1984, the date of foreclosure, through July 17, 1985, the date of the judgment in the trial court. The interest claim was properly asserted in the trial court and is properly urged on appeal. Since this court is rendering the judgment that should have been rendered by the trial court, we hold that Consolidated is entitled to prejudgment interest at the legal rate of six per cent per annum from June 5, 1984, through July 17, 1985, in the amount of $26,749. We also hold that the judgment for the total amount of $426,563 shall bear interest at the rate of ten per cent per annum from July 17, 1985, until paid.

Consolidated's pleadings and motion for summary judgment included a claim for attorneys' fees. However, there is no summary judgment proof of attorneys' fees. Therefore, the judgment rendered by this court does not include such fees.

Reversed and rendered.