GREENLAND VISTAS, INC. and Louis M. Stoler, Substitute Trustee, Appellants,

v.

PLANTATION PLACE ASSOCIATES, LTD., Appellee.

No. 2-87-122-CV.

Court of Appeals of Texas, Fort Worth.

March 2, 1988.

Rehearing Denied April 6, 1988.

---

**924**

Schlanger, Cook, Cohn, Mills & Grossberg, H. Miles Cohn, Houston, for appellants.

McManemin & Smith, P.C., Patrick F. McManemin, Dallas, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II and LATTIMORE, JJ.

OPINION

FENDER, Chief Justice.

Appellee Plantation Place Associates, Ltd., plaintiff in the trial court, brought suit against appellants, Greenland Vistas, Inc., and Louis M. Stoler, substitute trustee, to recover penalties for usurious charge of interest pursuant to TEX.REV.CIV. STAT.ANN. art. 5069–1.01 (Vernon 1987) and to enjoin a foreclosure sale. After a non-jury trial, the trial court found that an acceleration and demand made by Greenland Vistas to Plantation Place in regards to a certain wraparound promissory note constituted an usurious demand. The trial court entered a judgment against Greenland Vistas and Stoler and awarded Plantation Place $1,350,453.53 together with 10% interest per annum from the date of judgment plus attorneys' fees and granted the requested injunctive relief.

We reverse and render.

The parties here entered into a contract whereby Greenland Vistas sold an apartment project to Plantation Place. A portion of the purchase price was paid in cash, and Greenland Vistas paid the remainder by execution of a wraparound promissory note (hereinafter the purchase money wrap note) in the original principal amount of $2,707,433.96. The purchase money wrap note was secured by a deed of trust covering the property sold to Plantation Place. The purchase money wrap note included a prior lien indebtedness, the balance of which at the time of the sale was $2,074,-830.19.

During 1986, Plantation Place failed to make certain payments due under the purchase money wrap note. As a result of Plantation Place's failure to make payments, Greenland Vistas declared an event of default, accelerated the purchase money wrap note, and posted the property for foreclosure sale under the deed of trust. In connection with the acceleration of the note, Greenland Vistas demanded the sum of $2,944,654.51 representing the amount calculated to be the principal balance,

which included the underlying lien balance, together with accrued interest thereon. As a result of Greenland Vistas's demand, Plantation Place initiated this cause of action.

Although both parties filed lengthy briefs with extensive arguments supporting each respective side, the resolution of this case revolves around a single question: was the demand made by Greenland Vistas usurious in nature? We find that Greenland Vistas's demand was not usurious for the reasons set forth below.

■ The wraparound mortgage is a relatively new financing device which is used instead of a conventional junior lien mortgage. The wraparound mortgage is a subsequent and subordinate mortgage secured by real property upon which there exists a first mortgage that is outstanding and unsatisfied. The purchase money wraparound mortgage differs from a conventional second mortgage in that the wraparound seller in the transaction remains personally liable under any prior obligation, but the purchaser never becomes personally obligated for such. Note, *Wrap–Around Financing: A Technique for Skirting the Usury Laws?* 1972 DUKE L.J. 785, 787 (1972). A distinctive feature of such a transaction is the agreement by the wraparound seller that upon receipt of the debt service on the wraparound mortgage a deduction will be made therefrom and remitted directly to the first mortgagee to credit the required debt service on the first mortgage. *See* F. Gunning, *The Wrap–Around Mortgage ... Friend or U.F.O.?*, 2 REAL EST.REV. 35, 37 (Summer 1972).

A lender can violate the usury statute in any one of three ways. The statute provides penalties against any person who "contracts for," "charges," or "receives" interest in excess of the lawful limit. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1987). Plantation Place did not allege that Greenland Vistas contracted for usurious interest when it accepted the purchase money wrap note in partial payment for the purchase of the property. In other words, there was no allegation that the note on its face was usurious. The allegation of usurious interest in the case at bar essentially boils down to asserting the demand for the payment of $2,944,654.51 in connection with the payoff of the note constitutes a demand for usurious interest under TEX.REV.CIV.STAT.ANN. art. 5069–1.01.

Although Texas courts have considered other issues involving wraparound mortgage notes, no reported decision in Texas has considered a wraparound note holder defending usury claims. *Tanner Development Co. v. Ferguson,* 561 S.W.2d 777 (Tex.1977); *Consolidated Capital Sp. Trust v. Summers,* 737 S.W.2d 327 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Lee v. O'Leary,* 742 S.W.2d 28 (Tex.App.—Amarillo 1987, no writ). Keeping the general principles of a purchase money wraparound mortgage in mind, the question of whether usury existed is ascertained from the dominant purpose and intent of the parties as embodied in the transaction interpreted as a whole. *Consolidated Capital Sp. Trust,* 737 S.W.2d at 327.

■ The transaction here was not a loan of money but rather a sale of real estate in which Plantation Place received a deed to property in exchange for its cash down payment and the delivery of the purchase money wrap note in the sum of $2,707,-433.96. *See Tanner Development Co.,* 561 S.W.2d at 782. Thereby, Plantation Place received the full benefit of the property and likewise the full benefit of the principal amount of the note. *See id.*

Regardless of how the transaction was financed, the $2,707,433.96 note in conjunction with the deed of trust incorporated by reference the indebtedness of the senior lien for the protection of the parties. Each party respectively obligated itself to pay off the underlying liens upon certain conditions. We must examine these obligations.

Paragraph 7(b)(i), (ii) of the instrument entitled "All–Inclusive Secured Promissory Note" addresses the obligations of the par-

ties regarding the payment of regular monthly mortgage payments on the underlying indebtedness:

(b) Subject to the provisions of this subparagraph (b), Payee [Greenland Vistas] covenants and agrees with Maker [Plantation Place], but only until the earlier of the Maturity Date or the date on which the unpaid principal balance hereof is prepaid, to pay to the holders of the notes secured by the Senior Deeds of Trust (the "Senior Notes") such installments of the principal balances thereof, together with all interest accruing thereunder from the date hereof then due and payable, without material delay after receipt by Payee of Maker's payments hereunder. All of such payments shall be made on the following terms and conditions:

(i) Payee's obligation to make the foregoing payments in respect of the Senior Notes shall be expressly conditioned upon the following:

(A) Maker shall not be in default in the payment of this Note and Payee shall have not received any notice of the commencement of any foreclosure proceedings under any one of the Senior Deeds of Trust other than for a default arising out of a default by Payee hereunder.

(ii) Unless otherwise provided herein, Payee does not hereby assume any obligations under or in respect to the Senior Deeds of Trust.

This paragraph expressly states Greenland Vistas as payee obligated itself, without assuming personal liability to the holders of the underlying indebtedness, to pay the senior liens if Plantation Place as maker was not in default in its obligations under the purchase money wrap note. The fact that the payments were to be made "after receipt by Payee of Maker's payments" indicates Greenland Vistas would make the payments of the senior liens from the money received from Plantation Place's payment of the purchase money wrap note.

Paragraph 7(e) and (f) of the all-inclusive secured promissory note speaks to the payment of the underlying indebtedness at such time as the purchase money wrap note matures and is paid by Plantation Place in full, or at such time as Plantation Place may prepay the purchase money wrap note in full prior to maturity. Pursuant to paragraph 7(e), Plantation Place has the right to prepay the entire purchase money note by paying only the amount of its equity, in which event Greenland Vistas is to execute a release of the purchase money wrap note and Plantation Place is to accept the property subject to the underlying indebtedness. Additionally, paragraph 7(f) allows Plantation Place upon maturity date to pay the principal balance of the purchase money wrap note, together with all accrued and unpaid interest thereon and including any prepayment premiums due on the underlying indebtedness. Under both of these options Plantation Place obligates itself to pay the senior liens upon full payment of the purchase money wrap note. Moreover, paragraph 7(f) illustrates that it was the intention of the parties that the underlying indebtedness could be paid off contemporaneously with, and out of the proceeds received from, the full payoff of the purchase money wrap note by Plantation Place.

We must next review the language of the deed of trust to further determine the intent of the parties and what should have been the proper calculation of the principal balance of the purchase money wrap note due at the time of Plantation Place's default. Paragraph 38(d) of the deed of trust restates that Greenland Vistas has agreed, so long as Plantation Place is not in default, to pay the holders of the underlying notes what is due and payable thereof, and the payment is to be made "after receipt by Beneficiary [Greenland Vistas] of Grantor's [Plantation Place's] payments under the Note for the months in which the payments under the Underlying Notes are due." This paragraph further states Greenland Vistas's agreement to make such payments of principal and interest was made solely for the benefit of Plantation Place. This language manifests the

intent of the parties to have the underlying liens paid from Plantation Place's monthly payments.

Furthermore, in the event of Greenland Vistas's failure to pay, Plantation Place is authorized to make such payments directly to the holder of the underlying notes and such payments shall be credited against the amount next becoming due under the wrap note. However, the deed of trust provides that a default by Greenland Vistas shall not be deemed a default by Plantation Place under the deed of trust. Nevertheless, for all practical purposes, if Plantation Place wanted to prevent a potential foreclosure by the senior lien holders on the property in question it would have to undertake the obligation of making the payments of the underlying liens. In essence, Plantation Place outright purchased a piece of real estate subject to senior liens thereto.

On the other hand, if Plantation Place defaulted on its payment, the terms of the deed authorized Greenland Vistas to disburse the portion of the purchase money wraparound note as is sufficient to pay in full the indebtedness secured by the senior liens. In this event the substitute trustee, Stoler, would be subrogated to all rights held by the senior lienholder before such payment. Once again, Plantation Place would be obligated to pay an amount equivalent to the indebtedness secured by the prior senior lien to prevent any foreclosure action by the trustee.

When the 27 page deed of trust and the all-inclusive secured promissory note are read in whole and together, it becomes evident that: (1) Plantation Place purchased real estate and in partial consideration thereof delivered a $2,707,433.96 purchase money wrap note to Greenland Vistas; (2) the face amount of the note included a prior lien indebtedness; (3) in order to convey free and clear title of the property, Greenland Vistas undertook, but did not assume, to pay the underlying obligations out of the payments received from Plantation Place; and (4) Plantation Place took the property subject to these underlying liens and upon acceleration would be liable for the underlying lien balance.

The district court may have fallen into error by assuming that Greenland Vistas may not demand more than Plantation Place's equity in the purchase money wrap note: the difference between the balance due on the purchase money wrap note and sums due on the underlying indebtedness. The district court considered the demand in excess of this sum to be a demand for additional or usurious interest. However, we find from reviewing the nature of the transaction that the correct demand, which was indeed made by Greenland Vistas, would have been a demand for the principal balance which included the underlying lien balance and the unpaid interest accrued thereto. It follows that Greenland Vistas's demand was not usurious in nature and did not come within the purview of TEX.REV. CIV.STAT.ANN. art. 5069–1.01. Accordingly, Greenland Vistas's three points of error challenging the trial court's finding of usurious interest are sustained.

The trial court's judgment is reversed and judgment is rendered that Plantation Place Associates, Ltd. take nothing by its suit against Greenland Vistas, Inc., and Louis M. Stoler. All court costs, including those on appeal, are charged to Plantation Place.