541 So.2d 158 (1989)
BAYSHORE GARDEN APARTMENTS, LTD., Appellant,
v.
REAL ESTATE APARTMENTS, LTD., Appellee.
No. 88-00582.
District Court of Appeal of Florida, Second District.
April 7, 1989.
Robert M. Quinn of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, for appellant.
S. Thomas Padgett, of S. Thomas Padgett, P.A., Tampa, for appellee.
PATTERSON, Judge.
This is an appeal from a post-judgment order in a mortgage foreclosure action requiring appellant, the holder of a wraparound second mortgage, to obtain a satisfaction of mortgage from the first mortgage holder. We reverse.
In July, 1981, appellee, Real Estate Apartments, Ltd. (Real) purchased an apartment complex from Bayshore Garden Apartments, Ltd. (Bayshore). As part of the transaction, Real executed and delivered to Bayshore a promissory note in the original principal amount of $1,800,000.00, secured by a mortgage which "wrappedaround" the outstanding balance of a first note and mortgage held by Fortune Savings Bank (Fortune). Neither mortgage provided for escrow payments for real property taxes.
Real defaulted under the Bayshore mortgage, and on June 24, 1986, Bayshore instituted a mortgage foreclosure action. Fortune was not made a party. On November 26, 1986, the trial court entered a final judgment of foreclosure on Bayshore's behalf in the amount of $1,969,307.63, which included principal and interest then due to Fortune and made no provision for real property taxes, paid or unpaid.
Real sought protection in bankruptcy. Bayshore obtained relief from the bankruptcy stay and on June 19, 1987, the clerk of court conducted the foreclosure sale at which Acme Holding Company, an unrelated third party, was the successful bidder. Real then filed a motion for an order authorizing its redemption of the property. In its motion Real sought to pay the amount due to Bayshore under the final judgment, taking the property subject to the Fortune mortgage. In the alternative, Real sought to pay Fortune the amount owed it directly. The trial court directed that Real pay into the registry of the court the sum of $2,108,623.73, representing the amount of the final judgment together with post-judgment costs and interest, and that *159 the clerk disburse separately to Bayshore and Fortune.
After Real deposited the monies due, Bayshore filed a motion for disbursement. On July 1, 1987, the lower court entered an order authorizing redemption, cancelling and vacating the sale, discharging the lis pendens and directing the clerk to disburse.
On September 11, 1987, Bayshore provided Real with a satisfaction of the foreclosure judgment, which left the Fortune lien outstanding. Real then brought a motion to compel Bayshore to provide Real with a satisfaction of the Fortune mortgage, which motion was granted on October 26, 1987. The trial court denied rehearing on January 28, 1988. It is from that satisfaction order that Bayshore takes this appeal.
The controversy in this case arises from Fortune having paid the delinquent 1985 real property taxes due on the foreclosed property in the amount of $32,394.20. This payment was made on May 26, 1987, some six months after the final judgment of foreclosure and one month prior to the foreclosure sale. Fortune was unaware of both the sale from Bayshore to Real and the foreclosure action. Although the clerk has paid Fortune the full amount of the principal and interest due on its mortgage, the amounts advanced for unpaid taxes remain an additional lien on the property. In order to obtain the court ordered satisfaction of mortgage, Bayshore must pay the amount of the taxes to Fortune.
This procedural quagmire brings into focus some of the legal pitfalls occasioned by the use of "creative financing." Bayshore could not include the amount of delinquent taxes in its foreclosure action because it had not paid them. Fortune, who did pay, was not a party to the action, and its rights remained unaffected by the foreclosure judgment. There is no statute or rule of procedure which addresses the proper manner of foreclosing a "wraparound" mortgage. Such an instrument purports to show a total indebtedness due to the wraparound mortgagee, but at the same time, contains covenants of the mortgagee to satisfy one or more superior liens from its proceeds. In J.M. Realty Investment Corp. v. Stern, 296 So.2d 588, 589 (Fla. 3d DCA 1974), that court held that the foreclosing mortgagee was entitled to obtain a judgment of foreclosure for the entire amount due under both the wraparound mortgage and the underlying first mortgage. The propriety of that rule, followed by the lower court in this case, is not presented in this appeal. By this opinion, however, we do not necessarily embrace that principle.[1]
Real contends that Bayshore foreclosed the first mortgage together with its second mortgage, and therefore, the final judgment of foreclosure determined all of the claims due under both mortgages. That position is unfounded. Only Fortune could foreclose the first mortgage which remained a superior lien on the property at the time of the foreclosure sale. Acme, by its subsequent redemption, took title subject to Fortune's lien. Real must now resolve the issue of the balance remaining due to Fortune, or face foreclosure of the outstanding first mortgage. The result is not inequitable. Under the terms of Bayshore's second mortgage, it is Real's obligation to pay the property taxes. Real is now required to do no more than fulfill its original obligation. Bayshore removed itself from this controversy when the clerk disbursed the amounts due Bayshore and it delivered a satisfaction of the second mortgage to Real. Real and Fortune are now left to resolve the remaining issue of the outstanding indebtedness on the first mortgage.
We, therefore, reverse and vacate the satisfaction order which is the subject of this appeal.
RYDER, A.C.J., and PARKER, J., concur.
NOTES
[1] For a different approach to calculating the amount owed on a wraparound mortgage, see Lee v. O'Leary, 742 S.W.2d 28 (Tex. Ct. App. 1987).