812 P.2d 280

Charles W. ADAMS and Sharon L. Adams, husband and wife, Plaintiffs–Respondents,

v.

Carol Jane GEORGE, a single woman, Defendant–Appellant.

No. 18298.

Supreme Court of Idaho, Twin Falls, October 1990 Term.

May 31, 1991.

Hepworth, Nungester & Lezamiz, Twin Falls, for defendant-appellant. John C. Hohnhorst argued.

Harry Turner, Twin Falls, for plaintiffs-respondents.

BISTLINE, Justice.

The Adams' complaint alleged that Carol J. George had purchased real property which was encumbered by a deed of trust granted by a preceding owner. The Adams alleged that this trust deed had been assigned to them; they claimed that appellant had assumed and agreed to pay the obligation it secured. They further alleged that the deed of trust had been foreclosed but that a deficiency remained with respect to the underlying obligation for which the trust deed had been given as security. They sought to recover from George the amount of the deficiency together with attorney fees and costs incurred in litigation.

Both parties moved for summary judgment. In ruling for the Adams, the district court determined that George had assumed personal liability for the indebtedness which remained after foreclosure of the trust deed. The court heard evidence on the issue of the claimed deficiency and entered judgment for the Adams for $15,-763, which included interest, attorney fees and costs. George's appeal assigns error in so being held liable.

In June of 1982 the Andes purchased a residential property from the Needs. At that time the property was already encumbered by a deed of trust granted by Marcia Tipton to United First ("the Tipton note"). The Andes executed a promissory note to the Needs ("the Andes note"), and contemporaneously executed a deed of trust in favor of the Needs to secure repayment. In July of 1982 the Needs assigned the Andes note and deed of trust to the respondents Adams. It was on the basis of the rights created by this assignment of the Andes note that the Adams subsequently initiated the action against George.

In February of 1983 the Andes sold their interest in the property to Unruh and Friesen. A warranty deed was recorded at that time by which the Andes conveyed the property to Unruh/Friesen "subject to" the preexisting encumbrances created by the Tipton· and Andes deeds of trust.

In October of 1983 Unruh/Friesen sold the property to appellant George. A warranty deed was recorded at that time conveying the property to her "subject to" the existing Tipton and Andes deeds of trust. George executed two new "All–Inclusive Deed of Trust Notes" (the "AINs"), along with an "All–Inclusive Deed of Trust and Assignment of Rents" (the "AIDT") to secure payment of the two AINs.

According to George, the transaction was structured as a "wraparound" sale, and to facilitate the transaction, the two AINs George executed corresponded directly to, and thus "wrapped" the existing Tipton

and Andes notes. The single AIDT given to secure both AINs recited the sum to be secured as $41,000, representing the combined balance of the two AINs, and effectively, the "wrapped" balance of both the Andes and Tipton notes.

George agreed to purchase the property for the total sum of $45,000, with title conveyed "subject to" the two existing obligations totalling $41,000. After deduction for transactional costs, Unruh/Friesen's remaining equity necessitated a cash down payment by George of $2,054.

The parties initially established a payment escrow at First American which required George to make monthly payments on the two AINs totalling $437. First American was in turn instructed to disburse payments to the Twin Falls Bank and Trust, representing the debt service due on the Andes note, and to United First, representing the payments due on the Tipton note. Approximately four months later, in February of 1984, the parties canceled the escrow, and George was directed to make payments directly to the holders of the Tipton and Andes notes.

In February of 1987, George ceased making the payments. In June of 1987, the Adams, as holders of the Andes note, transmitted a Notice of Default noting that the payments were in arrears and advising of their intention to accelerate the outstanding balance. In October of 1987, the holder of the Tipton note and deed of trust likewise issued a notice of default.

The default under the Andes note was not cured within the time allowed following service of the Notice of Default by the Adams. In November of 1987 the trustee named in the Andes deed of trust sold the property at a trustee's sale. The property was sold to the Adams in exchange for a credit bid in the amount of $3,500. In February of 1988 the Adams initiated this action to recover the remaining deficiency.

The district court erred in finding that there was no genuine issue as to any material fact and that the Adams were entitled to a judgment as a matter of law. I.R.C.P. 56(c); *Rawson v. United Steelworkers of America*, 111 Idaho 630, 726 P.2d 742

(1986). We hold that there is a genuine issue of material fact as to whether George assumed the obligation created by the Andes note.

■ Both of the AINs contained a critical provision concerning the obligations of the respective parties with regard to payment of the existing mortgage debts:

*By Payee's acceptance of this note, Payee [Unruh/Friesen] agrees that, provided Maker [George] is not in default under the terms of this Note, Payee shall pay all installment of principal and interest which become due under the terms of the Senior Note(s).* In the event Maker shall be in default on this note, Payee's obligation to make such payments is deferred until the default is cured. Should Payee default in any of the installments as to the payment of the Senior [Andes and Tipton] Note(s) secured by the Senior Deed(s) of Trust, *the Maker may make said payments directly to the holder of such Senior Note(s)* [Adams and United First]; *any and all payments so made shall be credited to this note.*

R. 108–09 (emphasis added). The AIDT contained similar language:

By Beneficiary's [Unruh/Friesen] acceptance of this All–Inclusive Deed of Trust, Beneficiary agrees that, provided Grantor [George] is not in default on the Secured Note [the two AINs], Beneficiary shall pay all installments of principal and interest which become due under the terms of the Senior Note(s).

R. 111 (Section D(1) of the AIDT). Whether these provisions establish that George assumed the existing obligation seemingly is a triable question of fact.

■ George asserts that the transaction between George and Unruh/Friesen was a "wraparound mortgage" (WAM) transaction. The principal defining characteristic of a WAM is the "wrapping" of the existing debt owed by the seller to a prior seller or lending institution. The new buyer obligates herself or himself to the seller, who in turn remains obligated to pay the existing mortgage debt. While buyers and sell-

ers frequently choose to handle preexisting mortgage obligations by requiring that the new buyer assume them, the use of the WAM is a mutually-exclusive alternative to the more conventional "straight assumption."

The Idaho appellate courts have not had occasion to discuss WAMs. A Texas appellate court recently described the wraparound mortgage:

> The wraparound mortgage is a relatively new financing device which is used instead of a conventional junior lien mortgage. The wraparound mortgage is a subsequent and subordinate mortgage secured by real property upon which there exists a first mortgage that is outstanding and unsatisfied. The purchase money wraparound mortgage differs from a conventional second mortgage in that *the wraparound seller in the transaction remains personally liable under any prior obligation, but the purchaser never becomes personally obligated for such. A distinctive feature of such a transaction is the agreement by the wraparound seller that upon receipt of the debt service on the wraparound mortgage a deduction will be made therefrom and remitted directly to the first mortgagee to credit the required debt service on the first mortgage.*

*Greenland Vistas, Inc. v. Plantation Place Assoc., Ltd.,* 746 S.W.2d 923, 925 (Tex.1988) (citations omitted) (emphasis added). *See also Balboa Constr. Co. v. Golden,* 97 N.M. 299, 639 P.2d 586, 592 (1981) (using similar language to explain WAMs).

The district court concluded that the AINs proved that George had assumed the obligation under the Andes note. The court reached this conclusion based upon its reading of an isolated part of the AIN:

> The court concludes that George's new, all-inclusive note obligated her to pay the unpaid balance of the Andes' note:
>
>> The total principal amount of this Note also includes the unpaid principal balance of the promissory note ... secured by Senior Deed(s) of Trust more

particularly described as follows: A promissory note which had an original amount of $13,318.21 dated June 25, 1982 in favor of [the Needs] wherein [the Andes are] Payor.

(All–Inclusive Promissory Note, dated October 18, 1983.)

*Thus, George assumed the obligation and agreed to pay the unpaid balance of the Andes' note.* The law does not require the Adams to foreclose George's new, all-inclusive trust deed as a prerequisite to collecting on her note, especially when her new all-inclusive trust deed encompassed the Andes' trust deed:

> [George] does hereby irrevocably GRANT, BARGAIN, SELL AND CONVEY ... that property in the County of Twin Falls ... For the Purpose of Securing ... the performance of each agreement [George] incorporated by reference of contained herein ... (2) A Deed of Trust recorded June 30, 1982, as Instrument No. 823829 ... in favor of [the Needs].

(All–Inclusive Trust Deed, dated October 18, 1983.)

R. 116–17 (emphasis added).

The district court's reliance on this language for the conclusion that "George assumed the obligation and agreed to pay the unpaid balance of the Andes' note" is, in the words of the appellant, a non sequitur. A wraparound mortgage always involves the execution of a promissory note which "wraps" or "includes" the balance of an existing indebtedness as part of the debt owed by the wraparound buyer. This does not mean that the new buyer has therefore "assumed" personal liability for the existing obligation.

■ A promissory note, like the Andes note which was assigned to the Adams, is a contract. In the context of a promissory note secured by a mortgage, a purchaser of property can become liable for repayment of a note given by a preceding owner if the purchaser contractually commits herself or himself to "assume" the obligation.

■ There is a critical distinction between one who purchases property and

agrees to assume an existing debt and one who merely purchases property "subject to" an existing encumbrance. The mere conveyance of mortgaged property "subject to" an existing encumbrance granted to secure an existing mortgage does not constitute an assumption of personal liability by the purchaser. This distinction is well recognized in Idaho. The purchaser is not personally liable to pay an obligation secured by an existing encumbrance unless the assumption is proved by clear and convincing evidence. *Siekman v. Moler,* 47 Idaho 446, 454–55, 276 P. 309, 312 (1929).

There is evidence that George's purchase of the property was "subject to" the existing encumbrances. The warranty deed contains the "subject to" language. R. 66. The AIDT recites that the mortgage obligation it creates is "subject and subordinate to" the Tipton and Andes encumbrances. R. 77 (Section A of the AIDT). The closing statements denote that the property was "conveyed subject to" the two existing obligations. R. 71–72.

Some courts have concluded that where a subsequent purchaser buys property "subject to" existing encumbrances, and the outstanding balance is deducted from the purchase price, this fact supports an inference that the purchaser has impliedly assumed the debt. *Siekman v. Moler,* 47 Idaho 446, 451–52, 276 P. 309, 310–11 (1929). The Adams invoke this theory in their efforts to show that George was liable under the Andes note by suggesting that the closing statements showed that the balance of the existing mortgages were "credited" against the purchase price. George asserts that she did not receive a reduction in the purchase price because she assumed, and thereby relieved Unruh/Friesen of the obligations; rather, she received "credit" against the total purchase price because she executed the two AINs, promising to pay sums equal to these existing obligations. The inference of assumption would therefore simply not arise. Which interpretation of the transaction is the correct one is a question of fact to be determined by the jury.

Although the district court apparently gave it no consideration, the Adams also suggest that the fact that George made a number of payments directly to the holder of the Andes note establishes an intention by George to assume the debt. However, if property is purchased "subject to" an existing encumbrance, the mere fact that the purchaser makes payments on the existing mortgage does not establish that the purchaser has assumed personal liability for the debt. In *Siekman v. Moler,* this Court held that the evidence failed to demonstrate that the purchaser had assumed an existing debt despite the fact that the purchaser had made a number of payments directly to the holder of the mortgage. The Court wrote:

> We attach no special importance to the circumstance that appellant [the purchaser] paid interest later becoming due and that nothing was paid by the mortgagors [the sellers]. The land, the title to which had passed to appellant, was primarily liable for the payment of the debt and payment of interest by him was entirely consistent with his position that he accepted the title incumbered by the mortgage but without personal responsibility.

*Siekman,* 47 Idaho at 456, 276 P. at 312–13. Therefore, the fact that George made payments directly to the holder of the Andes note does not necessarily establish an intention by George to assume the debt.

The district court's grant of summary judgment to the Adams is vacated, and the cause is remanded to the district court for a jury trial on the issue of whether George assumed the obligation created by the Andes note. Costs on appeal are awarded to appellant pursuant to I.A.R. 40. No attorney fees on appeal.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

McDEVITT, Justice, dissenting:

I cannot agree with the majority's holding that George did not assume the existing mortgages. There are three main factors leading me to conclude that George assumed the underlying mortgages.

First, George purchased the property for $45,000.00 The two existing mortgages totaled $41,000.32. After deducting the mortgage balance from the purchase price and then making deductions for transactional costs, George paid the sellers $2,054.30 in cash. The deduction of the mortgage balance from the purchase price in and of itself is proof that the buyer assumed the mortgage. *Hinckley Estate Co. v. Gurry*, 53 Idaho 551, 26 P.2d 121 (1933).

Second, the language of the deed states that the purchase is "subject to" the Andes and Tipton notes. The term "subject to" is ambiguous and parol evidence is appropriate to clarify the ambiguity and to determine the intent of the parties. *Intern. Engineering Co. v. Daum Industries*, 102 Idaho 363, 630 P.2d 155 (1981). The law in Idaho is that an assumption of an existing mortgage by the purchaser need not be incorporated in the deed of conveyance nor need be contained in a written instrument; proof of an assumption by the purchaser may be proven on the basis of parol evidence. *Siekman v. Moler*, 47 Idaho 446, 276 P. 309 (1929). While the term "subject to" is not promissory and therefore does not create an obligation on the part of the purchaser, this language does not automatically demonstrate that an assumption did not occur. *Klundt v. Carothers*, 96 Idaho 782, 537 P.2d 62 (1975). As this Court has stated:

> It is with rare exceptions held that the oral agreement, either express or implied, to assume and pay the mortgage is not inconsistent with a deed of conveyance reciting that it is subject to the mortgage and the fact that the grantee so assumed and agreed to pay the debt may be shown.

*Siekman*, 47 Idaho at 452, 276 P. at 311.

Because of the ambiguity in the term "subject to," it was appropriate for the trial court to allow the introduction of extrinsic evidence to clarify the ambiguity in the contract. When the language of a deed is unclear or ambiguous, the intention of the parties must be ascertained from all the surrounding circumstances. *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969). I believe, as did the trial judge, the testimony showed that George assumed the underlying mortgages.

I do not believe the Statute of Frauds is applicable in this case. Idaho Code §§ 9-503 and 9-505(5) require that an agreement for the sale of real property, or an interest therein, must be in writing and signed by the party to be charged. These statutes prevent enforcement of oral contracts for the sale of real property. *Dunn v. Dunn*, 59 Idaho 473, 83 P.2d 471 (1938). In the present case we are not dealing with an oral contract, but with a written deed. Extrinsic evidence was introduced only for the purpose of explaining an ambiguous instrument, not to prove an oral contract.

The doctrine of part performance would apply to take the transaction at issue out of the Statute of Frauds if it was applicable. Where the parties to an oral contract have taken substantial and significant steps in performing an oral contract, the Statute of Frauds does not apply and the courts will not hesitate to enforce the agreement. *Wood v. Hill*, 70 Idaho 93, 212 P.2d 391 (1949); Idaho Code § 9-504. The taking possession of, making improvements to, and the payment of taxes on property is sufficient part performance to take the transaction out of the Statute of Frauds. *Jolley v. Clay*, 103 Idaho 171, 646 P.2d 413 (1982). In the present case, George took possession of the property, paid the sellers a cash down payment, made monthly payments on the property, and paid property taxes. This is sufficient part performance to take the contract out of the Statute of Frauds.

Third, an assumption of an existing mortgage by the purchaser can be *inferred or implied* from all the facts surrounding a transaction evidenced by an ambiguous writing and the conduct of the parties to that transaction. *Hinckley Estate Co. v. Gurry*, 53 Idaho 551, 26 P.2d 121 (1933). George made the monthly payments on both the Andes and Tipton notes directly to the holders of the notes, not to the sellers. This is a manifestation of George's acknowledgment that she assumed the mort-

gages. These actions are inconsistent with the contention that she did not assume the mortgages.

When considering these factors in conjunction with all of the other factors surrounding the transaction, I believe the conclusion that should be reached is that George assumed the mortgages.