ALTENBERND, Judge.
Horst Biersack appeals a summary final judgment entered in favor of Oaks Rent *440 ing, Inc. (Oaks). Oaks obtained the judgment on a promissory note that had been assigned to it by Home America, Inc. Because the parties stipulated for purposes of summary judgment that Oaks was not a holder in due course, we conclude that unresolved issues remain concerning affirmative defenses raised by Mr. Biersack. We reverse the summary final judgment and remand for further proceedings.
In 1983, Mr. Biersack purchased real property in Hillsborough County from Home America, Inc. He paid $272,000 for the property — $22,000 in cash and the remaining $250,000 with the promissory note that is the subject of this lawsuit. When Mr. Biersack purchased the property, it was encumbered by several existing mortgages, including a mortgage in favor of Mr. and Mrs. Churchill. The Churchills had loaned Home America approximately $42,000 in 1981 and had secured the loan with this mortgage. The Churchills’ promissory note was scheduled to mature with a balloon payment in August 1986.
When Mr. Biersack purchased this property, Home America did not satisfy the Churchills’ promissory note and did not obtain a satisfaction of the mortgage. Instead, Mr. Biersack gave Home America a wraparound mortgage. A wraparound mortgage essentially incorporates the amount owed by the seller under an earlier note and mortgage within the face amount of the buyer’s wraparound note and mortgage. Thus, the combination of the two recorded mortgages overstates the true, total indebtedness by the amount of the incorporated first mortgage. See generally, Bayshore Garden Apartments, Ltd. v. Real Estate Apartments, Ltd., 541 So.2d 158 (Fla. 2d DCA 1989); Adams v. George, 119 Idaho 973, 812 P.2d 280 (1991); F. Gunning, The Wrap-Around Mortgage ... Friend or U.F.O.?, 2 Real Est.Rev. 35 (Summer 1972).
When the Churchills’ promissory note came due, Home America did not pay its debt. The Churchills ultimately filed a foreclosure action against this property in 1990. The Churchills’ complaint named both Mr. Biersack and Oaks as Home America’s assignee.[1] Mr. Biersack filed a cross-claim seeking to obtain a judgment against Oaks for his $22,000 down payment and declaratory relief establishing that the $250,000 promissory note was invalid. By the time this cross-claim was filed, Oaks had filed a separate action against Mr. Biersack, alleging that he was in default on his promissory note. Apparently, Mr. Bier-sack had stopped paying Home America after it defaulted on the Churchills’ mortgage. The two actions were consolidated. Oaks moved to dismiss Mr. Biersack’s cross-claim, but it does not appear that any further action was taken on the cross-claim.
In October 1990, the Churchills received a final judgment of foreclosure, reflecting a total debt of $39,363. Despite the much larger price paid for the property by Mr. Biersack, neither he nor Oaks paid this obligation, and the Churchills purchased the property at the public sale in November 1990 with their judgment.[2] After this sale, neither Mr. Biersack nor Oaks owned the property, but the $250,000 promissory note between them had not been discharged or satisfied.
Thus, Oaks proceeded with its lawsuit to enforce Mr. Biersack’s promissory note. Mr. Biersack admitted that he had defaulted on one or more installment payments on the note. He argued, however, that Oaks was estopped or had waived its rights, in whole or part, to enforce the note because of the default on the note to the Churchills. Oaks obtained a summary judgment for $260,209 by convincing the trial court that Home America’s default on the Churchills’ note and mortgage was irrelevant concerning Oaks’ rights under Mr. Biersack’s note. We disagree.
*441 First, because it is agreed that Oaks is not a holder in due course of Home America's promissory note, any defense that would be valid against Home America is also effective against Oaks. § 673.306(2), Fla.Stat. (1983). Mr. Biersack has unresolved defenses that might be valid in an action on a simple contract between himself and Home America. These defenses can still be asserted against Oaks. Gerlach v. Donnelly, 98 So.2d 493 (Fla.1957).
Second, the major unresolved issue in this case which precludes summary judgment is whether the buyer, the seller, or both parties bear the risks arising from a public sale of the mortgaged property after default on the first or wrapped mortgage. Although these risks could be clearly and unambiguously allocated by the terms of a wraparound mortgage and its promissory note, this did not occur here. As a result, it is unclear whether the sale of the property has resulted in an invalidation of the promissory note to Oaks, whether the note has been reduced by some amount related to the default, or whether the note remains fully enforceable. It appears that parol evidence will be required to resolve these issues.
Five paragraphs of this wraparound mortgage are important in this case. They state:
2. Mortgagee hereby agrees to pay to the owners and holders of the above described mortgages their unpaid principal balances together with interest thereon as and when required by their terms and before the expiration of the applicable grace periods provided for such payments in said mortgages.
[[Image here]]
4. The Mortgagor agrees to comply with all of the terms of the prior mortgages other than with respect to the monthly payments due thereon.
5. The Mortgagor and Mortgagee agree that in the event the unpaid principal balance of the prior mortgages is reduced either by application by the holder of said mortgages of insurance proceeds or condemnation proceeds in reduction of said principal balance or by payments made by the Mortgagor with the written consent of the Mortgagee, then in such event, the Mortgagee agrees that the Mortgagor’s obligations to pay the principal indebtedness to the Mortgagee under this mortgage shall be likewise reduced by an equivalent amount; such equivalent amount to be deducted from the payment to be made by the Mortgagor to the Mortgagee under this mortgage at maturity; but no such deduction shall operate to reduce the obligation of the Mortgagor to make the monthly payments due and payable under this mortgage.
6.In the event Mortgagee fails to make any payments due under any of the prior mortgages, Mortgagor may make such payments and the amounts paid by Mortgagor will be credited to the payments next due under this mortgage.
[[Image here]]
9. The Mortgagor agrees to comply with all of the terms of the prior mortgages other than with respect to the payment of the monthly payments due thereon and with respect to the payment of any and all sums of principal and/or increased interest thereon declared to be due and owing by said owners and holders of the above described mortgages as a result of their exercise of any clause in said mortgages commonly referred to as a due on sale clause or as a result of the mortgagee’s failure to secure the prior written approval of said owners and holders of the above described mortgages to the sale of said property to the mortgagor and with respect to balloon mortgage payments.
These terms of the wraparound mortgage did not obligate Mr. Biersack, as mortgagor, to make “monthly payments” on the Churchills’ mortgage. Home America had that obligation. The mortgage gave Mr. Biersack the option, but not the obligation, to pay the Churchills’ mortgage on default. Since the wraparound note and mortgage duplicate amounts owing on the prior notes, the mortgage provides that it will be reduced if the Churchills’ note is paid through insurance or if the property is *442 lost m condemnation. The mortgage makes no similar arrangement for this type of judicial sale.
The mortgage does not expressly state that Mr. Biersack must pay the final balloon payment if Home America fails to do so. From the face of the contract, in particular paragraph 9, we cannot determine whether the parties intended that Mr. Bier-sack “comply with all of the terms of the prior mortgages other than ... with respect to balloon mortgage payments,” or whether they intended that he comply “with respect to those payments.”
We have also examined the promissory note for answers to these questions. Since it was executed along with the wraparound mortgage as a part of a single transaction, it is clear that, at least in an action not involving a holder in due course, the two agreements should be read and construed together. International Ship Repair v. General Portland, Inc., 469 So.2d 817 (Fla. 2d DCA), review denied, 479 So.2d 117 (1985). The promissory note, however, contains no answers to these questions.
Third, although the affirmative defenses do not expressly raise impairment of collateral under section 673.606, Florida Statutes (1983), the waiver or estoppel theories described in those defenses address the same issues that are described in this statutory provision. A holder of a promissory note discharges any party to the instrument to the extent that the holder unjustifiably impairs any collateral for the instrument without the party’s consent. See § 673.606, Fla.Stat. (1983). It remains for the trial court to determine whether this case involves such an impairment of collateral by Oaks as the holder.
Finally, Mr. Biersack gave the note in consideration for property that is now lost because neither he nor Oaks redeemed the property at the public sale. At a minimum, it would appear that the obligation under the wraparound promissory note should be reduced by the amount of the Churchills’ note, since that note merged into the foreclosure judgment and has been satisfied by the judicial sale.
Because these affirmative defenses were not resolved by pleadings and evidence of record at the time of the summary judgment, we reverse and remand for further proceedings.
THREADGILL, A.C.J., and PARKER, J., concur.

. Home America and Oaks are both corporations in which Vincent Bekiempis and his wife, Heidi, are officers or shareholders. Our record indicates that Home America filed for bankruptcy protection.

. Our record does not indicate that the Church-ills sought any deficiency.