(No. 6489. October 22, 1938.)

SAMUEL DUNN, NEVA A. SMITH, JAMES F. DUNN, JENNIE WOMACK, S. V. DUNN and EMMA DUNN, Husband and Wife; ALVARO DUNN and OPAL DUNN, Husband and Wife; and SAMUEL C. DUNN, Appellants, v. WILFORD E. DUNN and NEVA L. DUNN, Husband and Wife, Respondents; KARL PATRICK and CAROLYN O. PATRICK, Husband and Wife, Intervenors and Respondents.

[83 Pac. (2d) 471.]

James R. Bothwell and Harry Povey, for Appellants.

Frank L. Stephan and J. H. Blandford, for Intervenors.

AILSHIE, J.—This action was instituted in the district court for the purpose of securing a decree declaring an implied or constructive trust to a certain tract of land in Twin Falls and Owyhee counties, commonly known as the Devil Creek Ranch. The action is primarily the result of a family quarrel.

Samuel C. Dunn, one of the appellants, and his wife, Martha A. Dunn, were pioneer settlers on Three Creek situated in Owyhee and what is now Twin Falls counties. They had lived in that community for some forty-five years and acquired five different ranches aggregating several thousand acres. They also had a herd of cattle numbering some twelve to sixteen hundred head. Debts appear to have accumulated and business went bad and these old people wanted to readjust their business and if possible get out of debt; so, October 22, 1929, they conveyed by warranty deeds to their sons S. V. and Alvaro what were known and designated as the House Creek Ranch, the Devil Creek Ranch, the Home Ranch and the Deadwood Ranch, and at the same time transferred to these two sons an undivided two-thirds interest in their cattle business and assets, which was known as the 7–U Outfit. On the same date, October 22, 1929, they received from S. V. Dunn and Alvaro Dunn a contract agreement reciting

"That Whereas, the parties of the second part [S. C. Dunn and Martha Dunn] have this day sold, granted and conveyed unto the parties of the first part [S. V. and Alvaro Dunn] by Warranty Deed the following described lands situated in Twin Falls County, Idaho, to-wit: (here describing the property conveyed)

"Also the following described land situated in Owyhee County: (describing the property conveyed)

"And Whereas, The parties of the second part have also this day bargained and sold and transferred by Bill of Sale an undivided two-thirds interest in and to all cattle now owned by the parties of the first part, which cattle consists of approximately twelve hundred (1200) head of cows, steers, heifers and bulls located on ranges and ranches in the vicinity of Three Creek, Idaho; also an undivided two-thirds of all range rights held in connection with said cattle.

"Now, Therefore, as the consideration in full for said lands, ranges and cattle, the parties of the first part have agreed and do by these presents agree to pay unto the parties of the second part the following described sums, to-wit:

"The sum of Eight Hundred Dollars ($800.00) per annum payable to said S. C. Dunn on the first day of October of each

and every year hereafter, commencing on the first day of October, 1930, during the lifetime of said S. C. Dunn; and the sum of Eight Hundred Dollars ($800.00) per annum payable to said Martha Dunn on the first day of October, 1930, during the lifetime of said Martha Dunn; upon the decease of either said S. C. Dunn or said Martha Dunn, the whole sum of Sixteen Hundred Dollars ($1600.00) per annum is to be paid to the survivor during the remainder of his or her lifetime.''

The operation and management of the cattle ranches was thereupon commenced and thereafter continued in the name of ''S. C. Dunn and Sons.'' November 26, 1930, Martha Dunn, wife of S. C. Dunn and mother of S. V. and Alvaro Dunn, died. Mr. Dunn administered her estate and in the administration thereof did not report or make any mention or claim of any community or other interest in Devil Creek Ranch. In the meanwhile the partnership acquired what is known as the Walters Ranch at a cost of about $30,000, payable in instalments. On about the month of January, 1932, Mr. Dunn conveyed the Summer Camp Ranch to his son Wilford E. Dunn and also a one-third interest in the 7–U Outfit; and thereupon a new certificate of trade name was filed including Wilford E. Dunn's name with the father and two brothers, Stewart and Alvaro, under the name of S. C. Dunn and Sons, and the partnership continued to carry on the business. In the meanwhile the financial depression was becoming intense and discontent and dissension arose among the members of the partnership. Whereupon Stewart and Alvaro (October 28, 1933) agreed to and did retire from the firm and executed warranty deed and a bill of sale to their father to their interest in the land and the entire 7–U cattle enterprise, except the two ranches known as the Devil Creek Ranch and the House Creek Ranch, the former of which was retained by Stewart and the latter by Alvaro, to which they gave each other quitclaim deeds for the respective tracts. The intervenors Karl Patrick and his wife Carolyn O. Patrick purchased the Devil Creek Ranch from Stewart Dunn in February, 1935, and are the real parties defendant in interest in the present case.

After the retirement of Stewart and Alvaro from the partnership, the father and son Wilford filed a trade name certificate January 15, 1934, and continued to carry on the business of the 7-U Outfit under the firm name of Dunn and Son. Wilford thereupon conveyed to his father his one-third interest in the 7-U Outfit and the father then transferred to Wilford a one-half interest in the 7-U Outfit and at the same time deeded to him the Home Ranch and the Deadwood Ranch. During the existence of these several partnership associations prior to October, 1933, the indebtedness against the real estate owned by S. C. Dunn and Sons was reduced from approximately $35,000 to approximately $14,000. In the meanwhile Stewart and Alvaro had not received any pay or compensation for their services during the time they had been members of the partnership although wages had been paid the other brothers for any services performed by them up to the time of retirement of Stewart and Alvaro.

Appellants contend that at the time the ranches and cattle were conveyed to Stewart and Alvaro Dunn in October, 1929, there was an oral agreement had between them and their father that the property would be held together until the debts were paid and after that it was to be divided equally between all of their brothers and sisters; and that a trust relation immediately arose between them and it is now claimed that title to the Devil Creek Ranch vested in Alvaro and Stewart Dunn as trustees for the benefit of the father and all their brothers and sisters. Mr. Dunn (the father) testified as follows:

"Q. Mr. Dunn, did you have an agreement with two of your sons, Stewart and Al, sometime along late in October, 1929, about carrying on your business out there?

"A. Yes, sir.

"Q. Do you know about what date that was?

"A. I don't know exactly but it was sometime in 1929, I think.

"Q. Did you deed some property to them at that time, about the same time you had this agreement?

"A. Yes.

"Q. And did you give them a bill of sale to some cattle about that same time?

"A. I did.

"Q. Now, what was the understanding between you and Stewart and Al about this agreement, the transferring of the cattle and the real estate?

. . . . . . . . . . . .

"A. They was to have an undivided two-thirds interest they was to run the business, do the work, without charge; they was to have a living out of it, the necessaries of life but they was to pay the indebtedness to $40,000.00 if it took that much to pay it off; the indebtedness and expenses of running the outfit, that money was to come from the sale of beef cattle.

"Q. About how much indebtedness was there against the property at that time, Mr. Dunn?

"A. About $28,000.00.

"Q. What was to be done with the property after the indebtedness was paid off?

. . . . . . . . . . . .

The COURT: "He may answer subject to the objection; go ahead.

"A. Did you say answer?

The COURT: "Yes.

"A. Well, it was to be, finally to be divided up among the seven children, share and share alike to the seven children.

"Q. Was any money paid to you by Stewart or Al at the time this agreement was made?

"A. No, sir.

"Q. Or the conveyances?

"A. None at all."

Stewart testified to about the same thing.

The trial court found that there was "no evidence to substantiate the theory of any sort of a trust whatsoever" and "that there was no act on the part of . . . . Samuel C. Dunn at any time . . . . which could or would create an express trust for the benefit of the plaintiffs herein and the defendant, Wilford E. Dunn, and that there is no act or conduct on the part of . . . . Samuel C. Dunn, which would give rise to or create an implied trust by operation of law, or otherwise," and rendered judgment dismissing plaintiff's action.

The plaintiffs have appealed from the judgment and say in their brief:

"The appeal raises two principal questions:

"1. Did S. V. Dunn, one of the appellants, son of Samuel C. Dunn and his wife Martha Dunn, deceased, acquire and hold 'The Devil Creek Ranch,' hereinafter described, in trust for himself and his brothers Samuel Dunn, James F. Dunn, Alvaro Dunn and Wilford Dunn, and his sisters Neva Smith and Jennie Womack, share and share alike?

"2. Was the intervenor and respondent Karl Patrick an innocent purchaser for value, without notice that the property was held in trust?"

If the first question propounded by appellant should be answered in the negative, it would become unnecessary to deal with the second question in any manner. The appeal has been dismissed as to Wilford and Eva Dunn and they are no longer interested in the case.

The evidence as to the making of an oral agreement or the parties having an understanding between them, to the effect that the lands conveyed were to be held in trust for the father and all the children, is shrouded in uncertain, vague and indefinite terms, and, at the very most, merely casual. It was not so deliberate or localized as to enable one to confidently assert just what it consisted in or that it either preceded or was concurrent or contemporaneous with or subsequent to the conveyances and transactions by which the title was passed from the father to the sons. On the other hand there is no contention, so far as we can discover, that any such agreement or understanding was had between the parties at the time Stewart and Alvaro withdrew from the partnership and deeded the other ranches back to the father and gave him a bill of sale of their entire interest in the stock and 7–U Outfit, which was on October 28, 1933.

 The trial judge was not satisfied with the evidence produced and we think he reached the correct conclusion. A constructive trust cannot arise out of vague, indefinite, ambiguous or casual statements or declarations. It must be established by reasonably clear and definite statements or declarations or equally clear and definite evidence of acts and conduct to that effect. (*Bliss v. Bliss,* 20 Ida. 467, 119 Pac.

451, and other cases; *McCutcheon v. Thomas,* 47 Ida. 188, 273 Pac. 950; *McGuire v. Hansen,* 48 Ida. 34, 279 Pac. 413; *Flying Squadron Foundation v. Crippen,* (Ind. App.) 141 N. E. 896, 898.) Furthermore, about a year later (Sept. 20, 1934) the father instituted an action against S. V. Dunn and Emma, his wife, and Alvaro Dunn and Opal, his wife, to cancel the deed to these two ranches they had not deeded back (Devil Creek and House Creek), and to compel a conveyance back to him on the ground that it "was induced and procured by the false and fraudulent statements and representations made by the said defendants and by the exercise of undue influence upon him by the said defendants." An answer was filed and the case was subsequently tried by the late Judge Barclay of the eleventh judicial district, and findings and decree were entered to the effect that the plaintiff, S. C. Dunn, take nothing by his action and adjudging that "Defendant S. V. Dunn, at the time this action was commenced, was the owner, free and clear of any and all claims on the part of the plaintiff, of that certain real property situate in the Counties of Twin Falls and Owyhee, State of Idaho, and known as the Devil Creek Ranch, and particularly described as follows"; (description) and the decree concludes:

"It is further ordered, adjudged and decreed, that Plaintiff be and hereby is forever enjoined and debarred from asserting any claim, right, title or interest in and to said real property or any part thereof."

That decree was entered March 21, 1936. This present action was then, and had been, pending since November, 1934, and involves the same parties. The only difference is that there are more parties plaintiff and more parties defendant to the present action than were parties to the action decided by Judge Barclay. There the action was between:

"S. C. Dunn,

Plaintiff,

vs.

S. V. Dunn and Emma Dunn, Husband and Wife, and Alvaro Dunn and Opal Dunn, Husband and Wife,

Defendants."

and the present action, as originally filed November 19, 1934, was entitled

"Samuel Dunn, Neva A. Smith, and James F. Dunn,

Plaintiffs,

vs.

S. V. Dunn and Emma Dunn, Husband and Wife, and Alvaro Dunn and Opal Dunn, Husband and Wife, Wilford E. Dunn and Eva L. Dunn, Husband and Wife, Jennie E. Womack and Samuel C. Dunn,

Defendants."

The plea of *res adjudicata* was not set up in the pleadings of this present case, probably due to the fact that the former case *had not gone to judgment when the issues were made up in the present case.* Notwithstanding the lack of pleading, the judgment roll of the former case was introduced in this case, apparently by way of cross-examination and impeachment of certain of plaintiffs' witnesses. Irrespective of the manner in which this evidence found its way into this case, it is competent as a circumstance tending to disprove the trust theory of plaintiffs in the case under review; and the trial court made findings thereon to the effect that the title to the lands involved in this action was adjudicated between the same parties in the prior case, and that such judgment has become final. In commenting on this evidence and its effect on the present case, the trial judge, in his letter to the respective attorneys, in which he announced his conclusions and ordered judgment, said:

"As to the rights of the intervenor, plaintiffs, S. C., Stewart and Alvaro Dunn, by their acts are effectually estopped from asserting any adverse claims, irrespective of the bar of *res adjudicata* which, while not specifically plead, had crept into the evidence by way of impeachment on cross-examination."

Before the present case came to trial, there had been such a realignment of the parties to the action that we now have here S. V. Dunn and Alvaro Dunn as appellants asserting this trust theory against the Patricks as intervenors who are

the grantees of S. V. Dunn and wife. The view we take of other aspects of this case renders it unnecessary for us to pass upon the effect of the judgment in the former case as *res adjudicata* of the trust issue raised in the case at bar.

Another question of major importance arises in this case, which no doubt influenced the decision of the trial court, that has not been successfully met or answered. Sec. 16–503, I. C. A., provides as follows:

"No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

This statute prescribes a rule of evidence. In the instances enumerated the evidence must be in writing. Here we are confronted with unconditional warranty deeds from the grantor (Samuel C. Dunn) to the grantees (Stewart and Alvaro Dunn). These deeds make no mention of any trust whatever but on the contrary are unconditional grants and contain specific covenants for "quiet and peaceful possession of the said parties of the second part, their heirs and assigns"; and that the grantors "will warrant and by these presents forever defend" the said title and possession in the grantees. Now it is proposed by the grantor to assail that title and covenant for continued quiet and peaceful possession, by oral testimony contradicting the covenant and tending to prove that, as a matter of fact, the deed was not intended as an unqualified and unconditional conveyance and covenant but that, on the contrary, at some indefinite time and upon the happening of some uncertain contingency, this title should be converted into a trust in favor of third parties.

"Where a deed limits the use of the whole property to the grantee," says the Supreme Court of Oregon in *Hornbeck v. Crawford,* 130 Or. 230, 279 Pac. 870, "no resulting trust can arise or be implied. To imply a trust where the deed limits the whole use of the property to the grantee would be in direct contradiction to the terms of the deed."

As we understand the statute above quoted, it was intended to prevent just such a class of proof and to preclude the possibility of titles becoming subject to the capricious memories of interested witnesses. (*National Bank of Idaho v. Standrod & Co.,* 47 Ida. 93, 272 Pac. 700; *Kurdy v. Rogers,* 10 Ida. 416, 79 Pac. 195.) The statute (sec. 16–503) was enacted to guard against the frailties of human memory and the temptations to litigants and their friendly witnesses to testify to facts and circumstances which never happened. Experience had convinced both jurists and lawmakers that the only safe way to preserve and pass title to real property is by a written conveyance subscribed by the grantor. The beneficial effects of this statute would be destroyed if a grantor could come in years afterwards and submit oral testimony to show that the conveyance was not intended as an absolute grant but was only intended to create a trusteeship in the grantee. We are not unmindful of the fact that there are certain classes of cases wherein it has been held that this statute does not apply, but this is not such a case, nor does it fall within the class of cases where the purchase price is paid by one party and the title is taken in the name of another (*Pittock v. Pittock,* 15 Ida. 426, 98 Pac. 719; *Morrow v. Matthew,* 10 Ida. 423, 434, 79 Pac. 196) or a fraud or mutual mistake has intervened to the prejudice of a beneficial interest or equity in the realty.

The judgment is affirmed with costs to intervenors.

Holden, C. J., and Budge and Givens, JJ., concur.

Morgan, J., concurs in the conclusion reached.