677 P.2d 501

Albert BENGOECHEA, Donald G. Bengoechea, Gary Allen Bengoechea, Kenneth E. Bengoechea, Paul Scott Bengoechea, and Alta Jo Hofert, Plaintiffs-Respondents,

v.

Melvin W. BENGOECHEA and Shirley A. Bengoechea, Defendants-Appellants.

No. 14298.

Court of Appeals of Idaho.

Feb. 28, 1984.

James C. Meservy and Greg J. Fuller of
Seeley, Jones & Fuller, Jerome, for defend-
ants-appellants.

Daniel A. Slavin, of Stephan, Slavin, Eaton & Stephan, Twin Falls, for plaintiffs-respondents.

WALTERS, Chief Judge.

This is an appeal from a judgment imposing a trust upon real property which had been conveyed before the grantor's death. The beneficiaries of the trust are the same persons who otherwise would have received the property under the grantor's last will and testament. We affirm.

Approximately one year before his death in 1977, the grantor, Victor L. Bengoechea, conveyed title to two parcels of real property to his son and daughter-in-law, Melvin and Shirley Bengoechea. It is undisputed that, at the time of the conveyance, Melvin told his brothers and sister that the transfer was to facilitate selling the property if Victor became incapacitated and needed money to pay for his medical care. Later, when Victor passed away, Melvin indicated to his brothers and sister that he would sell the property and share the proceeds with them equally, in accordance with Victor's last will and testament. Subsequently, when they became insistent that Melvin act, he told them that the property was his and that he was not required to, and would not, give them an interest in the property or its proceeds. They filed a lis pendens against the property and sued, asking the court to quiet title to the property in them and to determine the interest to which Melvin and Shirley were entitled. Melvin and Shirley answered and counterclaimed, asking for damages resulting from the plaintiffs' clouding title to the property.

After trial to the court, a judgment was entered which vested a one-seventh interest in the real property in six of Victor Bengoechea's seven sons,[1] and in his daughter. The court found and concluded that Melvin held the property "in trust" for the benefit of those devisees under Victor's last will and testament. The court ordered Melvin to divide the property into seven equal

parts and convey a fee simple title to six of the parts to the plaintiffs. It denied relief to Melvin and Shirley on their counterclaim.

On this appeal, Melvin challenges several findings of fact made by the court. He also asserts that the uncontradicted testimony of a witness and the execution by Victor of a gift tax return were erroneously disregarded by the court. He further contends that the findings of fact do not support the conclusions of law and the judgment. Finally, Melvin argues that the trial court should not have "assign[ed] to counsel the task of drawing findings of fact and conclusions of law."

I

First, we will examine Melvin's specific challenges to the findings of fact. We note that, in actions tried without a jury, finding the facts is the province of the court, as trier of fact. Under I.R.C.P. 52(a), the court's findings "shall not be set aside unless clearly erroneous." The corollary to this rule is that clear error will not be found where findings of fact are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Where evidence is conflicting, the task of weighing the evidence is reserved to the trial court. *Id.*

The court found that Melvin "had the opinion that he held the land in trust for the whole family, but that he had the ultimate authority to manage the land and sell it if he felt this would benefit the family." The court further found that Melvin only claimed sole ownership after other members of the family insisted on sharing management. It also found that, though the conveyance was absolute in form, Victor and Melvin intended that Melvin and Shirley would hold the land in trust for Victor's devisees, the plaintiffs here. Finally, the court found that Melvin's state-

---

**1.** The remaining son had been given other property at some previous time, was not included in Victor's will and is not a party to this action.

ments concerning the status of the real property, made before and immediately after Victor's death, constitute the most reliable evidence of Victor's intent.

As to the finding that he "had the opinion that he held the land in trust for the whole family," Melvin argues that he testified to the contrary at trial and that there is no testimony or evidence in the record to support this finding.

It is true that Melvin testified at trial that the only condition upon the conveyance of the property was that Melvin would sell the property if his father needed money to pay for his medical care. Melvin testified at trial that Victor had never specified what Melvin should do with the property if it were not sold to pay Victor's medical expenses. He testified that he intended to divide the property out of his own generosity and not to satisfy any requirement imposed by Victor. Melvin's wife, Shirley, also testified that Melvin had told her that the land belonged to just the two of them.

However, one of Melvin's brothers testified that, during the time when the deeds were being prepared, and again following Victor's funeral, Melvin told him that Victor had deeded the property to Melvin so that each of the children would have a portion of the property. That brother testified that when he was the only one living close to Victor, his name "was on [Victor's] checking account" and that who Victor used for assistance "depended upon which member of the family was here at that time and could help him with these things." He also testified that Melvin had told him the land would be shared equally between Victor's children because "this is what [Victor] had wanted."

A second brother testified that, at the funeral, Melvin said that "he'd get the bills all paid and get the deeds out to the boys." The sister testified that Melvin had told her that "if anything would happen to his father that he would divide [the property] up as the will said."

In a deposition, published at trial, Melvin's wife, Shirley, testified that Melvin had told her that the purpose of conveying the property was to sell the property to pay expenses of Victor's care, if necessary, and "to split the property with everyone else" if a sale was not necessary. In his deposition, when asked if he agreed with Shirley's statements, Melvin answered "I did before" his brothers and sister began pressuring him to act, and that he guessed that his father had such a division of the property in mind.

Also, evidence adduced at trial showed that Melvin had distributed among his brothers and sister money which had been in accounts in both Melvin's name and Victor's name. All of this money had been put into the accounts by Victor. There was no evidence adduced to show that Melvin had been expressly required to distribute this money to his brothers and sister.

Upon these facts, the court made the contested findings—that Melvin believed that he held the land in trust for his brothers and sister, that Victor intended him to do so, and that Melvin's statements, made before and immediately after Victor's death, constituted the most reliable evidence of Victor's intent. Melvin asserts that these findings are clearly erroneous. We believe that the evidence is conflicting, insofar as these findings are concerned. Weighing this conflicting evidence is the task of the trial court. *Rasmussen v. Martin, supra.* These findings are supported by substantial and competent, though conflicting, evidence and will not be disturbed. I.R.C.P. 52(a).

Melvin next asserts that the uncontradicted testimony of Victor's neighbor, concerning Victor's intentions with respect to his property, was disregarded by the trial court. He also contends that the court disregarded the gift tax return made when Victor executed the deed to Melvin and Shirley.

Our Supreme Court has stated that the trial court may not disregard a witness' positive, uncontradicted testimony unless it is inherently improbable or impeached. *Russ v. Brown,* 96 Idaho 369, 529 P.2d 765

**192**

(1974). Here, the witness testified that Victor had a good relationship with Melvin and Shirley, a special relationship with their children and that Victor had said that he intended to give Melvin and Shirley "some" land for taking care of him. However, in our view this is not uncontradicted testimony that Victor intended to give Melvin and Shirley all of the land. It does not totally negate evidence that Victor intended that Melvin and Shirley were to receive some land, as provided in Victor's will. Similarly, the mere filing of the gift tax return would not establish conclusively that an absolute transfer to Melvin had been made, if the true facts showed otherwise. Here there was testimony from Melvin himself that he had received the property conditionally; i.e., that he was to sell the property, if need be, to generate funds for Victor's benefit, by paying for his medical care. As noted, there was testimony from other witnesses indicating that it was Victor's intent that the property be distributed in accordance with his will, if it was not sold to meet his expenses. At best, both the testimony from Victor's neighbor and the gift tax return provide evidence of Victor's intent which conflicts with other evidence. Neither was uncontradicted evidence which a trial court was obligated to accept. Rather, these were simply matters which the trial court was required to weigh in light of other, conflicting evidence. *Rasmussen v. Martin, supra.* We will not disturb the trial court's findings.

## II

We turn next to the conclusion of law, entered by the trial court, that Melvin held the property in trust for himself and the other parties. Following trial, the trial court wrote a letter to the parties, stating its decision, requesting counsel for the plaintiffs to prepare a proposed judgment, and inviting both sides to submit proposed findings of fact and conclusions of law unless they were willing to waive such findings and conclusions. In the letter, the court stated that it had found that Melvin and Shirley "own[ed] the land in constructive trust for the plaintiffs." However, in its formal findings, conclusions and judgment, subsequently entered, the court did not elaborate on the kind of trust it found. Those findings did state that "it was the intention of the parties to have the land held by [Melvin and Shirley] in trust for decedent's devisees under the will." It concluded from its findings that the deeds in question, "although absolute in form, constituted a transfer in trust," and that Melvin and Shirley "hold the property in trust." The court further concluded that the deeds "shall be reformed to provide a trust," to conform to its findings.

Melvin contends that the findings of fact do not support the conclusions of law and the judgment. In his argument, Melvin states that findings concerning Victor's intention do not support a conclusion that a constructive trust should be imposed. He further argues that findings as to the parties' intentions are irrelevant in determining whether to impose a constructive trust. He concedes that such findings are relevant to determining whether to impose a resulting trust, but he argues that the complaint does not state a cause of action which would justify imposing a resulting trust, that the plaintiffs did not seek imposition of a resulting trust and that the trial court did not decide the case on that theory.

█ We agree that the findings made by the court do not support a conclusion that a constructive trust should be imposed. Our Supreme Court has stated:

"Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title.... If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a

constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

*Hanger v. Hess*, 49 Idaho 325, 328, 288 P. 160, 161 (1930). The trial court here specifically found that Victor intended to have the land held in trust by Melvin and Shirley for Victor's devisees under his will. The court's findings would support a conclusion that a "resulting trust" should be imposed.

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

RESTATEMENT (SECOND) OF TRUSTS § 404 (1959). Here, as found by the trial court, the beneficial interest in Victor's land was "otherwise disposed of" by Victor's intention to have the land divided among his children in accordance with his will in the event it was not necessary to sell the land to provide for Victor's medical needs.[2]

■ Contrary to Melvin's argument, we believe that the complaint did state allegations which would justify imposing a resulting trust. The second count of the complaint alleges that execution of the deeds was intended "to allow [Melvin and Shirley] to reconvey the interests of the decedent to decedents [sic] rightful heirs and devisees, in equal shares." The complaint also alleges that Victor executed the deeds because of his "trust and confidence ... that [Melvin and Shirley] would comply with [his] request to reconvey the above property to his rightful heirs and devisees." Finally, in their complaint, the plaintiffs specifically requested that the court impose a resulting trust. While the specific conclusion of the court—that Melvin and Shirley hold the property in trust—is ambiguous as to whether a constructive trust or a resulting trust should be imposed, we uphold the trial court, on the proper theory, i.e., that of a resulting trust. *Archer v. Mountain Fuel Supply Co.*, 102 Idaho 852, 642 P.2d 943 (1982).

### III

■ Melvin asserts that the task of drawing findings of fact and conclusions of law should not have been assigned to counsel. He argues that the Idaho Supreme Court has indicated that delegating this task to counsel is a violation of I.R.C.P. 52(a), citing *Matheson v. Harris*, 98 Idaho 758, 572 P.2d 861 (1977); and *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977). However, the Idaho Supreme Court criticized only the practice of requesting that the prevailing party prepare findings and conclusions. In *Compton v. Gilmore, supra*, the court specifically approved the practice of having both parties submit proposed findings and conclusions, quoting 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil § 2578 at 702–704 (1971). The court should exercise its independent judgment in examining and adopting individual proposed findings and conclusions. *Compton v. Gilmore*, 98 Idaho at 195, 560 P.2d at 866. *See also Fearless Farris Wholesale, Inc. v. Howell*, 105 Idaho 699, 672 P.2d 577 (Ct. App.1983). Here, the court did request proposed findings and conclusions from both parties and there is no showing that the court failed to exercise its independent judgment in adopting the findings and conclusions ultimately entered. We hold that no error has been demonstrated.

2. Melvin did not raise in the proceedings below nor on this appeal any question concerning the applicability of the statute of frauds, or of a statute of wills, to the transaction before the court. A resulting or implied trust, arising by operation of law in favor of the person entitled to the beneficial interest in land, is not within the statute of frauds and may be established by parol evidence notwithstanding the existence of documentary evidence designating the owner of the legal title. *Pittock v. Pittock*, 15 Idaho 426, 98 P. 719 (1908). Neither are such implied trusts subject to statutes of wills. *See* cases cited in 76 Am.Jur.2d *Trusts* § 194 (1975).

We affirm the judgment of the trial court. Costs to the respondents. No attorney fees.

BURNETT and SWANSTROM, JJ., concur.