## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 50834

JEAN WILMA MACE, through GINGER COLLINS, her Attorney-in-Fact,

    Plaintiff-Appellant,

v.

DEBORAH LYNN LUTHER and RAYMOND JOSEPH LUTHER, Husband and Wife; SCOTT ARTHUR MACE, individually, and in his capacity as the Trustee of the JUDITH LYNN MACE REVOCABLE TRUST and as Personal Representative of the ESTATE OF JUDITH LYNN MACE; SHERYL LOUISE AUCUTT, THE BOUNDARY COUNTY PUBLIC LIBRARY,

    Defendants-Respondents,

and

BONNERS FERRY VETERINARY CLINIC, a professional service corporation doing business in Boundary County, Idaho; and WASHINGTON STATE UNIVERSITY FOUNDATION, an educational foundation residing in Washington State,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2024 Term

Opinion Filed: December 11, 2024

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Lamont C. Berecz, District Judge.

The judgment of the district court is <u>vacated</u>, the grant of partial summary judgment decision is <u>reversed</u>, and the case is <u>remanded</u>.

Bistline Law, PLLC, Coeur d'Alene, for Appellant Jean Wilma Mace. Arthur M. Bistline argued.

Wilson Law Firm, Bonners Ferry, for Respondents Deborah Lynn Luther, Raymond Joseph Luther, and Boundary County Public Library. Timothy B. Wilson argued.

1

Ramsden, Marfice, Ealy & De Smet, LLP, Coeur d'Alene, for Respondents, Scott A. Mace, Trustee of the Judith Lynn Mace Revocable Trust and as Personal Representative of the Estate of Judith Lynn Mace. Theron J. De Smet argued.

Scott A. Mace, Respondent *pro se*. Scott Mace submitted argument on the briefs.

Sheryl L. Aucutt, Respondent *pro se* submitted argument on the briefs.

———————————

MEYER, Justice.

This appeal arises from Ginger Collins' attempt to invalidate the sale of her mother's home after her sister sold the home without Ginger's[1] knowledge. Ginger's parents transferred property, including the family home, to her sister, Judith Lynn Mace ("Judy"), several years earlier. Judy lived with their parents and acted as their caretaker. After her father passed away, Judy remained on the property with their mother, Wilma Jean Mace ("Jean"), until Judy's declining health and her mother's dementia made it untenable for Jean to remain at home with Judy. Jean was moved to an assisted living facility.

After Judy was diagnosed with cancer, she created the Judith Lynn Mace Revocable Trust and transferred ownership of the property to the trust. Although the deed indicated that Judy had received the property in fee simple, Ginger believed Judy was holding the property in trust for Jean's benefit and that eventually the property would be split evenly between Ginger, Judy, and their brother, James. Approximately ten days before her death, Judy, as trustee, transferred ownership of the property to Deborah and Raymond Luther. Judy granted her caretaker, Sheryl Aucutt, a life-estate in the property[2] as part of her trust, devised her remaining assets to several charities, and named her cousin, Scott Mace, as her successor trustee.

Ginger did not learn of the sale until after Judy's death. She later filed suit on Jean's behalf to, among other things, (1) evict Judy's caretaker and the Luthers and (2) invalidate the sale of the property based on a resulting trust theory. Scott Mace, in his individual and trustee capacities, the Luthers, and Ginger filed cross-motions for summary judgment on the resulting trust claim. All parties filed motions to strike portions of the opposing parties' supporting declarations. Ginger

———

[1] As this case involves multiple parties and other individuals that share the same last name, they will be referred to by their preferred name to avoid confusion.

[2] The parties' pleadings below indicated that Judy either attempted to grant or did grant Ms. Aucutt a life estate in a residence on the Deep Creek Property. The issue of whether Ms. Aucutt has a life estate is not before this Court on appeal. Ms. Aucutt "adopted by reference" Scott Mace's appellate briefing.

offered extrinsic evidence of family discussions, which she described over multiple declarations, in support of her resulting trust claim. The district court declined to rule on the parties' motions to strike but granted partial summary judgment and dismissal of Ginger's resulting trust claim, determining that the extrinsic evidence offered by Ginger in support of her claim was inadmissible to establish a resulting trust in the face of an unambiguous deed.

Ginger and Jean filed a motion for reconsideration, reiterating their argument that extrinsic evidence may be admitted in support of a resulting trust claim under Idaho law. They also alleged, for the first time, that the transfer from Jean to Judy, and the subsequent sale of the property to the Luthers, violated public policy. The district court denied the motion for reconsideration. Scott Mace, as trustee, and the Luthers requested attorney fees under the Trust and Estate Dispute Resolution Act ("TEDRA"). The district court denied the request for attorney fees.

Ginger and Jean timely appealed the district court's grant of summary judgment and its denial of their motion for reconsideration. Scott Mace, as trustee, seeks an award of attorney fees under TEDRA on appeal. For the reasons discussed below, we vacate the judgment entered by the district court, reverse the district court's grant of partial summary judgment in favor of Scott Mace and the Luthers, and we remand this case for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Jean and Lewis Mace owned multiple properties in northern Idaho. They had three children: Judy, Ginger, and James. As Jean and Lewis grew older, they began transferring properties to their children. In the early 2000s, Jean and Lewis transferred ownership of one property to Ginger and James by a gift deed ("the Moyie Property") that granted them an undivided one-half interest in the Moyie Property. In 2003, Lewis and Jean wrote a letter to memorialize a different division of that property:

> Even tho [sic] this property has been legally deeded one half to James L. and spouse, and one half to Ginger L. and spouse, the family agreement reached in the year 2000 phone call was that Judith would to all actual intents and purposes have a 1/3 interest, Ginger L. and spouse a 1/3 interest, and James L. and spouse a 1/3 interest of said property even though Judith L's name is not on any legal paperwork.

In 2016, Jean and Lewis transferred their home and surrounding property to Judy (the "Deep Creek Property"), which is the subject of this appeal. The deed contained the following recitals:

> LEWIS E. MACE and WILMA JEAN MACE, husband and wife, do hereby grant for Ten Dollars ($10.00) and other valuable consideration, to JUDITH LYNN

3

MACE, a single person, all of the REAL PROPERTY interest now held or hereafter acquired in the following described real property:

[property description]

To have and hold the said REAL PROPERTY as her separate estate.

At the time of the transfer, Judy lived on the Deep Creek Property with her parents and acted as their caretaker. In 2017, the year Lewis passed away, a portion of the Deep Creek Property was sold to provide for Jean's medical care. In August 2017, Judy created the Judith Lynn Mace Revocable Trust (the "Trust").

In 2019, Ginger, Jean, and Judy wrote a letter outlining proposed changes they wanted to make to a proposed Mace Family Revocable Trust. The letter listed Ginger, Jean, Judy, and James as beneficiaries of the proposed trust. It indicated that the intent of the trust was to provide for the care of the beneficiaries throughout their lives and to pay for their expenses at death. The letter stated:

> We want the Trust to divide into 3 pieces, one for each Judith, Ginger, and James – or their beneficiaries, Wills or Trusts – upon fullfilment [sic] of the Trust and its division.
>
> We want the Trust managed jointly by Judith and Ginger and Jean – all being of sound mind. This is how our family has always handled our care. We have been of this methodology for decades.

It is unclear whether the letter, dated October 10, 2019, and purportedly addressed to a Sheryl at the Elder Law Group, was ever mailed. According to a subsequent November 2019 note, discussed below, the Mace Family Revocable Trust was "abandoned." In any event, The Mace Family Revocable Trust was never finalized.

In November 2019, Judy received Medicaid benefits through the Idaho Department of Health and Welfare. A sticky note attached to a letter from Health and Welfare included a handwritten message written by Judy (according to Ginger):

Idaho Department of Health and Welfare "Change Report Form" for Judith Lynn Mace [number omitted]

Change "I now own real property"

Date of change 10-18-16

Change reason:

"Mother owned the property and was putting it into a Trust which has been abandoned. Her dementia requires me to be her POA for finances and health. Property is now in my name."

4

In 2021, Jean moved to an assisted living center. Judy was diagnosed with terminal cancer in March of that year. Around that time, Judy transferred ownership of the Deep Creek Property to the Judith Lynn Mace Revocable Trust. As part of her trust, Judy named her cousin, Scott Mace, as her successor trustee and personal representative. Other terms of her trust included that it would pay for Sheryl Aucutt's funeral expenses. Judy's trust outlined how Judy wanted to devise her other assets to various charitable organizations, with any remaining assets going to Scott Mace.

In late September 2021, Judy, acting as trustee of her trust, entered into a Rent to Own Agreement with the Luthers to sell the Deep Creek Property. The same day, the Luthers provided Judy with a Letter of Intent and Agreement to Purchase the Deep Creek Property. Less than a week later, Judy died.

After Judy's death, Ginger was surprised to learn that Judy had sold the Deep Creek Property to the Luthers. On November 22, 2021, Ginger filed a complaint on Jean's behalf as her attorney-in-fact,[3] seeking to evict Aucutt and the Luthers and to invalidate the sale because Ginger claimed that Judy did not own the Deep Creek Property but was holding it in trust for Jean's benefit. Ginger also sought to invalidate the other transfers outlined by Judy in her trust, which are not the subject of this appeal. Ginger moved for summary judgment on the resulting trust claim. Scott Mace, individually and as trustee, and the Luthers filed cross-motions for partial summary judgment on the resulting trust claim.

Both sides filed motions to strike portions of the opposing parties' declarations and attached exhibits. Scott Mace, individually and as trustee, moved to strike portions of Ginger's declarations. As an individual, he moved to strike Ginger's first declaration in its entirety because he was not served with a copy of the declaration. As trustee, he moved to strike portions of Ginger's numerous declarations as irrelevant, conclusory, speculative, lacking in foundation, and containing hearsay. The challenged portions included the following statements by Ginger:

1. **Declaration of Ginger Collins in Support of Ex Parte Motion for Order to Show Cause (December 21, 2021).**

   a. Paragraph 4: "In a misguided effort to protect my parents' assets from being taken by a governmental agency for expenses related to their care, my parents deeded the real property which is the subject of this dispute to my sister . . . . My parents never intended to transfer any beneficial interest in

---

[3] Ginger and Jean will be referred to collectively as "Ginger" in the discussion of the underlying case unless context requires them to be referred to separately.

5

the property to Judy and always viewed themselves as the owners of the property despite transferring it to Judy."

. . . .

2. **Declaration of Ginger Collins in Support of Motion for Summary Judgment (April 27, 2022).**

   a. Paragraph 6: "Everyone, including us siblings and our parents, thought it would be prudent that Mom and Dad's property (hereinafter the Deep Creep Property) be transferred into Judy's name to preserve it for their future needs. My parents never intended to gift anything to Judy, and it was all three of us siblings [sic] understanding that the property would be used for our parents' benefit and then split three ways between us. Judy did not pay the $10 recited as consideration in the deed or provide any other consideration for the property. Our parents did not intend to make any gift to Judy of the Deep Creek Property."

   b. Paragraph 14: "Judy was at all times aware that she did not own the Deep Creek Property outright even though it was titled in her name. She knew it was to be managed for Mom's benefit and then split three ways after Mom passed away."

. . . .

3. **Declaration of Ginger Collins in Opposition to Defendants', Luthers' Motion for Summary Judgment (May 24, 2022).**

. . . .

   b. Paragraph 5: "Finally, Debbie Luther was well aware that Judy Mace did not have the ability to transfer any of our mother's property unless all three siblings agreed to the transaction – just as we had done with the Moyie property as well as the sale of the 17 acres that used to [be] part of the subject property. Debbie Luther knew this had not occurred when the Luther's [sic] entered into this agreement with Judy."

Scott Mace, as trustee, also challenged the admissibility of a letter from Ginger to Deborah Luther dated February 16, 2020, attached to one of Ginger's declarations.

Scott Mace, as trustee, contended that Ginger's statements (1) were offered only to contradict the deed; (2) were barred by Idaho's Deadman's statute and the statute of frauds under Idaho Code sections 9-502, 9-505, and 9-202; and (3) were not relevant to the claim for a resulting trust. He also sought to exclude portions of the February 16, 2020, letter and Ginger's testimony reciting statements made by Judy and others, as inadmissible hearsay, speculative, conclusory, and lacking in foundation. In a footnote, he also moved to strike Ginger's Intent to Rely on Previously Filed Declarations of Ginger Collins and the attached declarations.

6

Ginger moved to strike portions of Scott Mace's declaration, where he provided his opinion regarding the transfer of the Deep Creek Property from Jean and Lewis to Judy. Scott Mace stated:

> In my opinion, Lewis E. Mace and Wilma Jean Mace ("Jean"), as Grantors, and Judith L. Mace ("Judy"), as Grantee, did not intend for the Grantors to retain any interest in the subject Property. This is based upon the plain language of the "REAL PROPERTY DEED" and my communications, experience and interactions with Lewis, Jean, and Judy prior to and around the time the Deed was executed, as well as subsequent to its execution.

On summary judgment, Ginger maintained that the underlying facts were not in dispute and that she was entitled, as a matter of law, to a court order finding that the Deep Creek Property was subject to a resulting trust. She contended that it was undisputed that "Judy paid nothing for the property," that "Judy acknowledged that she did not outright own the property," and that Judy had previously "directed her attorneys to revise her trust to reflect her obligation to manage the Deep Creek Property for the benefit of Jean Mace and her obligation to split the property between herself, Ginger Collins, and Jim Mace after Jean's passing." She sought a court order that would return ownership of the Deep Creek Property to Jean. Her motion and brief were supported by multiple declarations from Ginger, in which she made statements regarding what her parents and Judy intended when they transferred the Deep Creek Property to Judy in 2016, and her statement that Deborah Luther knew that Judy was holding the Deep Creep Property in trust for Jean and that Judy could not transfer the property. The deed to the Moyie Property, the 2003 letter regarding that property, a copy of the letter regarding the Mace Family Revocable Trust, and a copy of the sticky note on the Department of Health and Welfare statement were attached to Ginger's various declarations as exhibits.

Scott Mace, as trustee, maintained in his brief in support of the motion for partial summary judgment that the deed transfer of the Deep Creek Property from Jean and Lewis to Judy was "unambiguous as a matter of law." As a result, Ginger could not establish a claim for a resulting trust by clear and convincing evidence at trial because "the intent of the [p]arties is merged into the [d]eed and the [d]eed contains absolutely no qualification, restriction, reservation or limitation on the interest conveyed by the Grantors." He argued that "[e]xtrinsic evidence is not necessary, nor admissible to contradict the unambiguous terms of the [d]eed." The declaration of Scott Mace supported the motion for partial summary judgment. The Luthers joined in Scott Mace's motion for partial summary judgment and motion to strike. Scott Mace, individually, also filed a motion to dismiss and motion for summary judgment supported by his declaration.

7

Scott Mace, individually and as trustee, and the Luthers opposed Ginger's motion for summary judgment on the claim for a resulting trust. Their argument in *opposition* to Ginger's motion was that summary judgment in favor of a resulting trust claim should be denied because, at the very least, the plain language of the deed raised a genuine issue of material fact as to whether Jean and Lewis intended to create a resulting trust. They also reiterated their argument that much of Ginger's evidence in support of the resulting trust claim was inadmissible in the face of an unambiguous deed. In opposition, Ginger contended that the evidence created a genuine issue of material fact regarding the parties' intent when the Deep Creek Property was transferred from Jean and Lewis to Judy.

The district court heard arguments regarding the parties' motions to strike and cross-motions for partial summary judgment. On November 11, 2022, the district court issued its written opinion. It disposed of the parties' motions to strike: "As an initial matter, both parties have filed motions to strike portions of declarations. The [c]ourt is able to reach a decision on summary judgment without deciding the motions to strike." The district court denied Ginger's motion for partial summary judgment and granted partial summary judgment in favor of Scott Mace, individually and as trustee, and the Luthers. It determined that the deed was an unambiguous fee simple conveyance that "unequivocally grants Judy all interest in the property and for her to have it as her own separate estate." The district court noted that the deed "contains no language limiting, qualifying, restricting, or reserving the interest that is being transferred," it did not contain "a reversion, create or mention a trust, trustee, or beneficiary," and the district court determined that "[h]ad the parties intended to limit or restrict Judy's interest, they could have included such language." The district court applied the merger doctrine to the deed and held:

> [A]ny prior discussions or agreements—whether Jean and her children discussed that this property would be held as a trust, or agreed it would be sold to pay for medical expenses, or decided it would be split into thirds after Jean and Lewis died, or any other "family agreements"—were merged into the deed.

It held that it was not required to consider extrinsic evidence, even in connection with a resulting trust claim, because the deed was unambiguous.

On December 21, 2022, Ginger filed a motion for reconsideration. She maintained that "[e]xtrinsic evidence is required to be admitted if a claim for a resulting trust is made[.]" Ginger urged the district court to reconsider its decision because "[e]xtrinsic evidence is admissible to establish that Judy was only to manage this property with the assistance of her sister Ginger and

then when Jean died, it would be divided equally." Alternatively, Ginger argued that the district court had "found that the entire transaction was against public policy and illegal and extrinsic evidence is always admissible to show such to be the case." She urged the district court to void the sale to the Luthers and void the transfer of the Deep Creek Property to Judy as being against public policy.

On appeal, however, Ginger clarifies that any argument she made below that the transfer from Jean and Lewis to Judy was void as against public policy was hypothetical; she indicated it was made in response to the district court's discussion of possible Medicaid fraud, based on a theory that Jean and Lewis had transferred the Deep Creek Property to Judy to circumvent a potential future Medicaid claw-back. On appeal, Ginger contends that if the transaction was in fact made to circumvent Medicaid, it would be void as against public policy. She maintains, in that event, that ownership of the Deep Creek Property would revert back to Jean.

Scott Mace, as trustee, opposed the motion for reconsideration, arguing that summary judgment was proper under *Dunn v. Dunn*, 59 Idaho 473, 83 P.2d 471 (1938), and that extrinsic evidence of a resulting trust was inadmissible to contradict an unambiguous deed. He also contended that the transfer of the Deep Creek Property from Jean to Judy was not void as against public policy and should not be considered for the first time on a motion for reconsideration.

The district court denied Ginger's motion for reconsideration. It affirmed its determination that the deed was unambiguous and its decision that extrinsic evidence is inadmissible to contradict the deed. The district court clarified that it did not rule that the transfer of the Deep Creek Property from Jean to Judy violated public policy. Scott Mace, as trustee, subsequently sought an award of attorney fees under TEDRA. The district court declined to award attorney fees, finding that this case was not a matter under TEDRA because the dispute involved the interpretation of a deed.

After the district court denied the motion for reconsideration, Ginger filed a second amended complaint that removed the claims related to Judy's mental capacity. Ginger subsequently reached an agreement with the Luthers regarding the other claims. On April 11, 2023, the district court entered a final judgment dismissing the case with prejudice.

Ginger timely appealed the district court's denial of the motion for partial summary judgment and the denial of the motion for reconsideration. Both parties seek an award of attorney fees on appeal.

9

## II.  ISSUES ON APPEAL

1. Did the district court err by declining to consider extrinsic evidence in connection with Ginger's claim for a resulting trust?

2. Did the district court err when it refused to void the property transfer because it violated public policy?

3. Is either party entitled to an award of attorney fees on appeal?

## III.  STANDARD OF REVIEW

"Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Papin v. Papin*, 166 Idaho 9, 18–19, 454 P.3d 1092, 1101–02 (2019) (internal quotation marks omitted) (quoting I.R.C.P. 56(a)). "[A] mere scintilla of evidence or merely casting a slight doubt of the facts will not defeat summary judgment." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (citation omitted). When determining "whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Id.* (citation omitted). Where the parties have filed cross-motions for summary judgment, it "does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Papin*, 166 Idaho at 19, 454 P.3d at 1102 (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)). Further, "the mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact." *Id.* (quoting *Intermountain Forest Mgmt., Inc.*, 136 Idaho at 235, 31 P.3d at 923).

When the trial court will sit as the trier of fact, it "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment," if appropriate, "despite the possibility of conflicting inferences." *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019) (quoting *P.O. Ventures, Inc. v. Loucks Fam. Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007)). "Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder." *Id.* (quoting *P.O. Ventures*, 144 Idaho at 237, 159 P.3d at 874).

The admissibility of affidavits, declarations, and other documents provided in support of or in opposition to a motion for summary judgment is a threshold issue that must be decided before a court reaches the merits of the summary judgment motion. *Fragnella*, 153 Idaho at 271, 281 P.3d

10

at 108 (citation omitted). This Court reviews the trial court's decision regarding "the admissibility of testimony offered in connection with a motion for summary judgment" for an abuse of discretion. *Id.* (citing *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15, 175 P.3d 172, 177 (2007)). A trial court does not abuse its discretion when it "(1) correctly perceive[s] the issue as one of discretion; (2) act[s] within the outer boundaries of its discretion; (3) act[s] consistently with the legal standards applicable to the specific choices available to it; and (4) reache[s] its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

## IV.   ANALYSIS

### A. The district court erred when it determined that extrinsic evidence was inadmissible to support Ginger's resulting trust claim.

"A resulting trust is a reversionary, equitable interest implied by law in property that is held by a transferee, in whole or in part, as trustee for the transferor or the transferor's successors in interest." Restatement (Third) of Trusts § 7 (Am. L. Inst. 2003). In contrast to an express trust, a resulting trust "arises from an intention that is legally attributed to a transferor based on the nature of the transaction, rather than from manifested intent." *Id.* at cmt. a. The purpose of a resulting trust is to carry out an implied legal intention. *Id.* "[T]he resulting trust gives effect to what appears from the circumstances probably would have been intended if the person making the disposition had foreseen the situation that has occurred but with no opportunity to 'rewrite,' or add to, the equitable interests." *Id.*

A resulting trust is different from a constructive trust,[4] although the terms are often conflated. *See Imperato v. McMinn*, 406 F.3d 987, 989 n.1 (8th Cir. 2005) ("The confusion between constructive and resulting trusts is common among courts and practitioners."); *e.g.*, *Rowe v. Burrup*, 95 Idaho 747, 750, 518 P.2d 1386, 1389 (1974) (appellant confused "the law of constructive trusts with that of express and resulting trusts"). The purpose of a constructive trust is to provide an equitable remedy when property is obtained as the result of fraud, duress, or other unconscionable behavior; it is "raised by equity for the purpose of working out right and justice[.]" *Bengoechea v. Bengoechea*, 106 Idaho 188, 192–93, 677 P.2d 501, 505–06 (1984) (quoting *Hanger v. Hess*, 49 Idaho 325, 328, 288 P. 160, 161 (1930)). "A constructive trust arises where a

---

[4] In this case, Ginger is not claiming a constructive trust. The district court's opinion, however, repeatedly characterized her claim as a claim for a constructive trust.

11

person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Rowe*, 95 Idaho at 750, 518 P.2d at 1389 (first citing *Davenport v. Burke*, 30 Idaho 599, 167 P. 481 (1917); then citing 5 A.W. Scott, *The Law of Trusts* § 462 (3d ed. 1967); and then citing Restatement (First) of Restitution § 160 (Am. L. Inst. 1937)).

On the other hand, "[a] resulting trust arises only where such may reasonably be presumed to be the intention of the parties as determined from the facts and circumstances existing at the time of the transaction." *Peterson v. Gentillon*, 154 Idaho 184, 190, 296 P.3d 390, 396 (2013) (internal quotation marks omitted) (quoting *Shurram v. Watts*, 80 Idaho 44, 53, 324 P.2d 380, 385 (1958)). Imposition of a resulting trust is proper when "(i) it appears that the person receiving legal title to the property was not, in the circumstances that have occurred, intended to have the beneficial interest, and (ii) no effective disposition was otherwise made of the beneficial interest in question." Restatement (Third) of Trusts § 7 cmt. a (Am. L. Inst. 2003). "The case [establishing a resulting trust] is made by showing circumstances which raise a presumption that the person making the transfer or causing it to be made did not intend to give the transferee the beneficial interest in question, and thus that the interest remained in the transferor[.]" *Id.* When considering whether a resulting trust has been established, this Court looks to the "acts and conduct [of the parties] apart from any contract[.]" *Hawe v. Hawe*, 89 Idaho 367, 375, 406 P.2d 106, 110 (1965) (quoting *Shepherd v. Dougan*, 58 Idaho 543, 553, 76 P.2d 442, 445 (1937)). A resulting trust may be established even if the party to be charged as trustee "may never have agreed to the trust and may have really intended to resist it." *Id.* (quoting *Shepherd*, 58 Idaho at 553, 76 P.2d at 445). "Extrinsic evidence may be used to establish a resulting trust." *Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.*, 156 Idaho 893, 902, 332 P.3d 805, 814 (2014).

This Court has allowed extrinsic evidence to establish a resulting trust because such evidence can speak to the parties' intent. The parties' intent is essential to a court's determination of whether to impose a resulting trust. *Bengoechea*, 106 Idaho at 192–93, 677 P.2d at 505–06. For example, in *Bengoechea*, the trial court considered extrinsic evidence of the parties' intent when siblings claimed an interest in land that their father had deeded to their brother before the father's death. *Id.* at 190, 677 P.2d at 503. Extrinsic evidence of the parties' intent at the time of the transfer was relevant because the father had also executed a will indicating he intended to divide his property equally between his children. *Id.* At a bench trial, the trial court considered testimony

12

from the son and his siblings regarding the transfer. *Id.* at 191, 677 P.2d at 504. The trial testimony indicated that at the time of the transfer, the son told his siblings that the transfer was made so he could sell the property to pay for their father's medical care, if needed. *Id.* at 190, 677 P.2d at 503. When their father died, the son initially told his siblings he intended to sell the property and split the proceeds with them equally. *Id.* But when his siblings pushed their brother to sell the property, he refused. *Id.* He told them "that the property was his and that he was not required to, and would not, give them an interest in the property or its proceeds." *Id.* Multiple family members testified to the son's statements that the father transferred the property to the son "so that each of the children would have a portion of the property." *Id.* at 191, 677 P.2d at 504. The trial court determined that the son's statements made immediately after the father's death "constitute[d] the most reliable evidence of [the father's] intent." *Id.* at 190–91, 677 P.2d at 503–04. The trial court ultimately held that "though the conveyance was absolute in form," the father and son intended that the son would hold the land in trust. *Id.* As a result, this Court held that the imposition of a resulting trust was appropriate. *Id.* at 193, 677 P.2d at 506.

Further, the district court's reliance on *Dunn v. Dunn*, 59 Idaho 473, 83 P.2d 471 (1938), to hold that it need not consider extrinsic evidence of a resulting trust in the face of an unambiguous deed was misplaced. The *Dunn* case involved a "family quarrel" between ranchers over property, with one party seeking to impose a resulting trust. *Id.* at 474–75, 83 P.2d at 472. Even though the claim was referred to as a claim for a resulting trust, this Court analyzed the case based on whether the imposition of a constructive trust was appropriate. *Id.* at 480–81, 83 P.2d at 474. We noted that the deeds at issue made "no mention of any trust whatever[.]" *Id.* at 483, 83 P.2d at 475. The district court in this case seized on language in *Dunn* that warned of the "possibility of titles becoming subject to the capricious memories of interested witnesses" and "guard[ing] against the frailties of human memory and the temptations to litigants and their friendly witnesses to testify to facts and circumstances which never happened." *Id.* at 484, 83 P.2d at 475–76. We note, however, that in *Dunn*, the trial court *admitted testimony* from the father and one of his sons regarding their intent at the time the father transferred the ranches and a majority stake in the family cattle business to two of his sons. *Id.* at 479, 83 P.2d at 474–75. Both the father and one son testified that the agreement was for both sons to run the family business and work the ranches with the goal of paying off the $40,000 in debt associated with the property. *Id.* at 479, 83 P.2d at 473–74. Once the debt had been paid, the intent was to have the ranches "be divided up among the seven children,

share and share alike to the seven children." *Id.* at 479, 83 P.2d at 473. We affirmed the trial court's determination, *following a trial*, that the evidence produced did not support the imposition of a constructive trust. *Id.* at 480, 83 P.2d at 474. We held that the family members' testimony as to any agreement or understanding that "the lands conveyed were to be held in trust for the father and all the children, is shrouded in uncertain, vague and indefinite terms, and, at the very most, merely casual." *Id.* It did not rise to the level of clear and convincing evidence needed to impose a constructive trust. *Id.* We did not hold that the admission of the testimony itself was in error. *Id.* at 484, 83 P.2d at 476.

For these reasons, we hold that the district court erred in this case when it declined to consider extrinsic evidence in support of Ginger's resulting trust claim based on the lack of ambiguity in the deed. On remand, the district court will need to consider the other arguments raised by Scott Mace and the Luthers in their motion to strike under the Rules of Evidence; specifically, their arguments that certain statements included in Ginger's declarations lack foundation, are speculative and conclusory, and contain hearsay. The district court will also need to consider Ginger's argument in her motion to strike that statements made by Scott Mace in his declaration are conclusory.

## B. Because we are reversing the district court's grant of partial summary judgment on another basis, we need not address whether the transfer was void as against public policy.

Although Ginger lists as an issue on appeal whether the district court erred when it refused to void the transfer of the Deep Creek Property to Judy because it violated public policy, she clarified at oral argument before this Court that she never argued that the transaction violated public policy but was merely responding to the district court's discussion in its order. She clarified that the argument that the transfer should be voided because it violated public policy was largely hypothetical. We also note that the district court was very clear in its decision on Ginger's motion for reconsideration that it "did not find that the transfer of property here violated public policy." Thus, the discussion by the district court regarding a possible violation of public policy and "unclean hands" was dictum and did not constitute the basis for the district court's decision.

To the extent that Ginger makes an alternative argument that the district court erred by failing to void the transaction on public policy grounds, we hold that this issue is not squarely before the Court because much of the discussion regarding possible Medicaid fraud below was hypothetical. It was not fully developed in the record before the district court, and Ginger appeared

14

to have abandoned that line of argument at oral argument on appeal. We will not address it at this stage because we are reversing the district court's grant of partial summary judgment on another basis.

### C. No party is entitled to an award of attorney fees on appeal.

Ginger seeks attorney fees on appeal under Idaho Code section 12-121, under which this Court may award attorney fees on appeal to the prevailing party when the appeal was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Ginger contends that "[m]aking any argument that parol evidence is not admissible to prove a resulting trust is frivolous" given that "[t]he law has been established on this point since 1892 and re-affirmed in 2014." Although she is the prevailing party for the purposes of this appeal, because we are vacating the summary judgment dismissal of the resulting trust claim, we decline to award attorney fees on appeal under this section against Scott Mace, individually or as trustee, and the Luthers. They were defending the district court's summary judgment decision in their favor, and while we are reversing the district court's decision and remanding for further proceedings, we are hard pressed to hold in this case that by defending a prevailing position below, Scott Mace, in his various capacities, and the Luthers presented their defense of the appeal unreasonably, frivolously, or without foundation.

Scott Mace, as trustee, and the Luthers seek an award of attorney fees on appeal under Idaho's Trust and Estate Dispute Resolution Act, Idaho Code section 15-8-208(1). TEDRA contemplates an award of attorney fees to "any party" in "proceedings involving trusts, decedent's estates and properties, and guardianship matters." I.C. § 15-8-208(1)–(2). This case is not a matter covered by TEDRA because it does not relate to a question or dispute involving creditors, personal representatives, trustees, the administration of an estate or trust, or the interpretation of a trust or a will. *See* I.C. § 15-8-103(1)(a)–(g) (defining "matters" under TEDRA). The main issue of this case was the interpretation of a deed and a claim for a resulting trust. The claim for resulting trust did not bring the matter within the ambit of express trusts governed by TEDRA. As a result, we decline to award attorney fees under TEDRA on appeal.

## V. CONCLUSION

For the above-stated reasons, we vacate the judgment, reverse the district court's summary judgment dismissal of Ginger's claim for a resulting trust, and remand this case for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and ZAHN CONCUR.